UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 12 CIV. 0454

_Diane Harris_

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____

 _NYU Langone Medical Center_

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

## COMPLAINT
## FOR EMPLOYMENT
## DISCRIMINATION

Jury Trial:  ☒ Yes  ☐ No
*(check one)*



This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

☒     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

_____     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
**NOTE:** *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

_____     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

_____     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

_____     New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

**I.     Parties in this complaint:**

A.      List your name, address and telephone number.   Do the same for any additional plaintiffs named.
Attach additional sheets of paper as necessary.

Plaintiff       Name  Diane Harris
                Street Address  353 W. 117th Street, Apt. 2B
                County, City  Manhattan, New York
                State & Zip Code  New York  10026
                Telephone Number  646-258-2346

B.      List all defendants' names and the address where each defendant may be served.   Make sure that the
defendant(s) listed below are identical to those contained in the above caption.   Attach additional sheets
of paper as necessary.

Defendant       Name  NYU Langone Medical Center
                Street Address  One Park Avenue, 16th floor
                County, City  Manhattan New York
                State & Zip Code  New York  10016
                Telephone Number  212-404-4076

C.      The address at which I sought employment or was employed by the defendant(s) is:

                Employer  NYU Langone Medical Center, Rm TH-181
                Street Address  560 First Avenue
                County, City  Manhattan, New York
                State & Zip Code  New York, 10026
                Telephone Number  212-263-5500

**II.     Statement of Claim:**

State as briefly as possible the facts of your case, including relevant dates and events.   Describe how you were
discriminated against.   If you are pursuing claims under other federal or state statutes, you should include facts
to support those claims.   You may wish to include further details such as the names of other persons involved
in the events giving rise to your claims.   Do not cite any cases.   If you intend to allege a number of related
claims, number and set forth each claim in a separate paragraph.   Attach additional sheets of paper as
necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

                _____          Failure to hire me.

                __X__             Termination of my employment.

                __X__             Failure to promote me.

                _____          Failure to accommodate my disability.

                _____          Unequal terms and conditions of my employment.

*Rev. 05/2010*                                            2

☒      Retaliation.

_____      Other acts *(specify)*: _____.

*Note:*   *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.    It is my best recollection that the alleged discriminatory acts occurred on: 6/26/00 – Ongoing
                                                                                                      *Date(s)*

C.    I believe that defendant(s) *(check one)*:

     ☒      is still committing these acts against me.

     _____      is not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

     ☒    race _____          ☐    color _____

     ☐    gender/sex _____          ☐    religion_____

     ☐    national origin _____

     ☐    age.   My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

     ☐    disability or perceived disability, _____ *(specify)*

E.    The facts of my case are as follow *(attach additional sheets as necessary)*:

See attached sheets _____

_____

_____

_____

_____

_____

_____

_____

*Note:*   *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.    Exhaustion of Federal Administrative Remedies:

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: 01/19/2010 _____ *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on ___10/18/2011___ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: _____

TOTAL amount of damages have not been determined
I am seeking monetary relief to compensate

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

for loss wages, pain & suffering.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this __16__ day of __January__, 20 _12_

Signature of Plaintiff    _Diane Harris_

Address    _353 W. 117th Street, Apt. 2B_
           _New York, NY 10026_

Telephone Number    _646-258-2346_

Fax Number *(if you have one)*    _____

*Rev. 05/2010*

4

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Diane Harris<br>353 W. 117th Street<br>Apt 2-B<br>New York, NY 10026 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2010-01071 | **Jose T. Vega,**<br>**Investigator** | **(212) 336-3682** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin Berry*

**Kevin J. Berry,**
**District Director**

10/18/2011

*(Date Mailed)*

Enclosures(s)

cc:    **Daniel T. Driesen**
**NYU LAGONE MEDICAL CENTER**
**One Park Avenue, 16th Floor**
**Labor and Employment General Counsel**
**New York, NY 10016**

# Complaint for Employment Discrimination: Pursuant to Title VII of the Civil Rights Act of 1964

| | |
|---|---|
| Plaintiff: | Diane Harris<br>353 W. 117th Street, Apt. 2B<br>Manhattan, New York<br>New York, 10026<br>646-258-2346 |
| Defendant(s) | NYU Langone Medical Center<br>One Park Avenue, 16th Floor<br>Room 16044<br>Manhattan, New York<br>New York, 10016<br>212-404-4076 |
| Was Employed At: | NYU Langone Medical Center<br>Office of Hospital Administration, Tisch 181<br>560 First Avenue<br>Manhattan, New York<br>New York, 10026<br>212-263-5500 |

## Statement of Claim

*The discriminatory conduct(s) of which I complain in this action are: [1] Failure to Promote Me and, [2] Retaliation and, [3] Termination of Employment. NYU Langone Medical Center [NYULMC] discriminated against me based on my race [Black] and, clearly retaliated against me because I voiced opposition to practices I believed were forbidden by law.*

## Failure to Promote Me

In 2001 I began applying for positions through the Career Opportunity Posting Program COPP),later renamed Steps to Success [STS]. STS provides a system for employees to advance in their career. The staff handbook reads, *"It is our policy to promote from within whenever possible and to encourage all employees to advance to the full extent of their capabilities"*
See,[NYUMC staff handbook pg. 20, marked Exhibit 1]

From 2001-2009, I can prove I applied to no less than sixteen (16) positions through the STS program.Positions Ishould have easily qualified for in terms of the required experience, education and skills set. These positions were classified management level [hospital and school] reporting to faculty and executive level staff, including chair leveled physicians. Few if any required skills or experience greater than those I used in performing the responsibilities associated with my current position.Either I, [a] received no feedback from Human Resources or, [b] was not granted an interview or, [c] interviewed

but another candidate was chosen, most times of a race other than blackor, [d]deemed unqualified without valid justification

*See,[April 8, 2008email, marked Exhibit 2;September 16, 2008 email marked Exhibit 3; July 8, 2008letter from Diane Harris to Carol Musto-Schiano, marked Exhibit 4]*

**Followed NYULMC protocolin addressing and attempting to correct discriminatory practices and actions perpetuated towards me…**

From the beginning of my employ with NYULMC I was discriminated against.  I made many attempts to address and work with office managers and executives, including thosein Human Resources. BeingReginald Odom, Carol Musto-Schiano, and Nancy Sanchez.Believing NYULMC was concerned with finding and correcting the causes of such issues.Thegoal beingto address and correct biased and disparate treatmentdemonstrated towards meand hoping itwouldresult in a work environment that encompassed equity,fairness, and equivalent employment opportunity afforded to others.Communicating both verbally and viae-mail messaging;I beganincluding the executives in Human Resources on these communications around 2005-06 in attempt to resolve these issues. I continued to do so until my discharge from employment in late 2009, early 2010

*See, [June 30, 2006 and, July 6, 2006 e-mails, and, NYULMC 2009 Policy Statements re: EEOmarked Exhibits 5 and, 6 and,7]*

**<u>Retaliation and Termination of Employment</u>**

In attempt to disguise their retaliatory action(s) towards my speakingagainst  discriminatory practicesI experienced while working as, Assistant to the Vice President, Hospital Administration, Kimberly Glassman, Sr. VP and Chief Nursing Officer, Kevin Kirchen, VP, Strategic Area Program Development, Reggie Odom, VP Employee and Labor Relations, and Kevin Hannifan, Sr. VP, Hospital Administration, didwith malicious intent,allege the following as reason(s)NYULMC terminated my employment in January 2010. They did so, in spite my having cooperated fully with their mandates, eventhough I disputed their validity and questioned their legality.NYU Langone Medical Center claims that(1) On December 11, 2009 I displayed such abhorrent psychological disorientation and irrational behavior towards my supervisors that it caused NYULMC to mandate that I, (a) undergo evaluation and receive treatment from their employee assistance program administered by Corporate Counseling Services (CCS) and, (b) obtain written clearance from Corporate Counseling Services in order to be permitted return to work **and** since,

(2) I did not obtain clearance from CCS, because I failed to comply withCCS treatment(a) I failed to keep appointments and,(b) Ifailed to receive psychiatric medical clearance from Jan Roda, MD Psychiatry,therefore,

(3) <u>Termination</u> of my employment occurred on January 19, 2010 as result of my intentional refusal to adhere to CCS's prescribed treatment and because,

(4)I failed to re-engage contact with CCS by January 15, 2010the date set by NYULMC and because,

(5) I acted inappropriately; angrily, antagonistically, and insubordinately towards my supervisors in the months preceding termination.

*See [undated letter from NYULMC, marked as Exhibit 8]; [January 15, 2010 letter from Diane Harris, marked Exhibit 9]; [January 19, 2010 letter from NYULMC, marked Exhibit 10]*

### **NYULMC's Libelous Allegations**

NYU Langone Medical Center through their staff attorney,Daniel T. Driesen, denied all claims I brought against them in EEOC Charge 520-2010-01071.See [April 6, 2010 NYULMC response to EEOC, marked Exhibit 11]

NYULMC presented nosubstantial or objective proof they did not discriminate against menor that my charges against them are frivolous, without merit,based upon self-conjecture.

Rather, NYU Langone Medical Center chose to viciously attack my personal and professional integrity andany other attributes whichmay contribute to my value as an Executive Assistant NYULMC did attack. Further, they made malicious ridicule at my right to expect and hold them accountable to the same laws and standards they purport to enforce.NYULMC used its power and influence to breachdoctor-patient confidentialityand HIPPA privacy rights. In addition, theyrobbed me of my confidence as a patientin the assurance that confidentiality will be maintained when utilizing medical services through company sponsored insurance plans.NYU Langone Medical Center used their authoritative powerto gain access to private and confidential informationin order to continue purporting unethical practices. Their callous and methodical method of abusing a system that is meant to help frightens me.

NYULMC has shown itself no "gentleman"nor do they display any moral civility in accepting any responsibility for the damage they have caused in my life. Using words such as"scattershot" regarding the EEOC charges I was forced to initiate against them, after they nearly ruined my life while still further seeking to hurt and demoralize me.  If NYULMC has not discriminated against me because of any of the reasons listed in my charge, what then, were the causesof their treatment towards me?

NYULMC dismisses my dissatisfaction with salary as greed and suggests I should be thankful that each yearI received "no less" than a 2.5% increase; andthat Ihad no rights to complainas my salary was atleast at midpoint range. It stands out as remarkable to me at Kim Glassman and Kevin Kirchenability to recall and providesuch detailed and descriptive account of the events leading to my terminationbut fail to remembertheirs and Reggie Odom'sassurancethat working for them would afford opportunity for

promotion and salary increase.  Instead they laughed and ridiculed when I expected them to uphold their agreement.

Like all those who deny racistpractices,NYULMC pointedthatalthough they refused to promote me into the position of office manager they did hire another "black".  They further emphasized the fact thatnot only is Deidre PeterkinBlack;she is aBlack Christian.  I cannot help but wonder why they chosenot to provide race and religion profileson the numerous candidatesNYULMC hiredover me into positions I have applied to, *and woul d* be considered asobjective and substantial proof.

I believe the evidence I have submitted with this application is sufficient to establish a *prima facie case*which shows [1] I belong to a protected class and, [2] I was qualified for the positions I applied for and, [3] I suffered an adverse employment issue and, [4] adverse employment action occurred under circumstancesgiving rise to an inference of discriminatory intent.

Although they deny the charges, there is strong indication that NYULMC did direct discriminatory and retaliatory animus towards me.

With malicious and covert practicedid,with purposedhostility; inflict severe and possibly irreversible harm.

I petition the court to affirm my charge against NYU Langone Medical Center. Thank you.

*Prepared forSubmissionto the U.S. District Court, Southern District of New York*

*by*

*Diane Harris, acting Pro Se*   onthis17th *day of January, 2012*

*Address*        *353 W. 117th Street*
                 *New York, NY 10026*
*Telephone*      *646-258-2346*

NYU MEDICAL CENTER
POLICY AND PROCEDURE REFERENCE
STAFF HANDBOOK

*Exhibit 1*

## CAREER DEVELOPMENT

NYU Medical Center offers a wide range of career opportunities, often within a single department. It is our policy to promote from within whenever possible and to encourage all employees to advance to the full extent of their capabilities.

The Career Opportunity Posting Program (C.O.P.P.) provides a system for employees to advance in their careers at NYU Medical Center through the posting of vacant position information.

All vacant full time regular positions are listed on the C.O.P.P. phone line at extension 3666l and posted twice a week on bulletin boards located throughout NYU Medical Center. Employees who have completed nine months of continuous service in their current position and have maintained a satisfactory record, are eligible for participation in the program.

Employees may initiate their participation in the C.O.P.P. by following the procedures listed on the C.O.P.P. Bulletin Boards.

## LOCATION OF COPP BULLETIN BOARDS

1. TISCH HOSPITAL
   Adjacent to main bulletin
   board outside the Tisch
   Hospital Cafeteria

2. RUSK INSTITUTE OF
   REHABILITATION MEDICINE
   Next to elevators, Ground Floor

3. MEDICAL SCIENCE BUILDING
   Ground Floor, near
   the Student Cafeteria

4. GREENBERG HALL
   545 First Avenue, Concourse Level

5. 660 FIRST AVENUE
   4th Floor

20

Exhibit 1

## Harris, Diane

| | |
|---|---|
| **From:** | Harris, Diane |
| **Sent:** | Tuesday, April 08, 2008 3:10 PM |
| **To:** | Ramos-Hernandez, Maritza |
| **Subject:** | RE: |

Hi Maritza,

Yes, Wes was kind enough to let me know personally.  Thanks for following up.  No, I did not meet with Dr. Malaspina's office.

| | |
|---|---|
| **From:** | Ramos-Hernandez, Maritza |
| **Sent:** | Tuesday, April 08, 2008 3:06 PM |
| **To:** | Harris, Diane |
| **Subject:** | RE: |

Hi Diane.  I'm not quite sure if you heard but Wes Smith selected another internal candidate.  Just thought I let you know.  Did you also meet with a Dolores Malaspina for her executive asst position?

**Maritza Ramos-Hernandez**
**Senior Staffing Specialist**
**NYU Medical Center**
✉ One Park Avenue - 16th Floor | New York, NY | 10016
☎ 212.404.3853   🖷 212.404 3888
Maritza.Ramos-Hernandez@nyumc.org

| | |
|---|---|
| **From:** | Harris, Diane |
| **Sent:** | Tuesday, April 01, 2008 3:19 PM |
| **To:** | Ramos-Hernandez, Maritza |
| **Subject:** | RE: |

Yes, that is what I was told.  I assume the young lady wanted to determine if I should be re-interviewed for steps to success.

| | |
|---|---|
| **From:** | Ramos-Hernandez, Maritza |
| **Sent:** | Tuesday, April 01, 2008 3:18 PM |
| **To:** | Harris, Diane |
| **Subject:** | RE: |

Hi Diane.  I am actually not overseeing the recruitment for this position.  But I will forward your cv to the recruiter.

**Maritza Ramos-Hernandez**
**Senior Staffing Specialist**
**NYU Medical Center**
✉ One Park Avenue - 16th Floor | New York, NY | 10016
☎ 212.404.3853   🖷 212.404 3888
Maritza.Ramos-Hernandez@nyumc.org

| | |
|---|---|
| **From:** | Harris, Diane |
| **Sent:** | Tuesday, April 01, 2008 3:14 PM |
| **To:** | Ramos-Hernandez, Maritza |
| **Subject:** | RE: |

Hi Maritza,

I actually was calling about another req. 00795. I called last week to have my resume submitted for this position. I was told she needed to speak with you to determine whether I should come in or be interviewed by phone since I had spoken with you rather recently. Please advise. Thanks.

**Req #:** 007599 SOM **Type:** Regular-Full-Time **Title:** Executive Asst to the Dean
Shift: 9am - 5pmUnion Code:n/aWork Schedule:Mon - Fri
Bachelor's degree and 5 or more years of relevant experience or an equivalent combination and experience assisting a high level executive, and coordinating office activities, preferably in a healthcare or not-for-profit environment, and ability to interact with distinguished, highly visible and public donors, and/or their representatives, plus proven ability to provide high-level customer service while communicating policies and procedures to individuals at all levels and ability to use problem solving skills, plus intermediate to advanced knowledge of standard office software (Word, Excel, Access, Powerpoint) and on-line and traditional information databases required.
Candidate will be the point of contact for both internal and external constituencies on all matters pertaining to the Office; researching, prioritizing, and following-up on multiple issues and concerns addressing the Dean, including those of a sensitive and/or confidential nature; administering a variety of special projects, some of which may have an organizational-wide impact; overseeing and coordinating the day-to-day activities of the office administrative support staff; coordinating and/or assisting with establishing or recommending budge allocations for the office and reviews revised and final budgets; plus all related duties
Excellent organizational, interpersonal, and written and verbal communication skills are essential.

| | |
|---|---|
| **From:** | Ramos-Hernandez, Maritza |
| **Sent:** | Tuesday, April 01, 2008 3:06 PM |
| **To:** | Harris, Diane |
| **Subject:** | |

Hi Diane. I received your message. I haven't heard anything yet from Wes. I will follow-up and let you know by end of this week. Hope all is well.

**Maritza Ramos-Hernandez**
**Senior Staffing Specialist**
**NYU Medical Center**
✉ One Park Avenue - 16th Floor | New York, NY | 10016
☎ 212.404.3853    🖷 212.404 3888
Maritza.Ramos-Hernandez@nyumc.org

⊕ You replied on 4/7/2008 9:22 AM.

**Harris, Diane**

| | | | |
|---|---|---|---|
| **From:** | Smith, Wesley | **Sent:** | Mon 4/7/2008 9:18 AM |
| **To:** | Harris, Diane | | |
| **Cc:** | | | |
| **Subject:** | RE: Executive Assistant | | |
| **Attachments:** | | | |

Dianne -

Frankly, I really don't have any suggestions for you ! You present yourself in an extremely professional manner, you are articulate, polite and easy to speak with !

The issue really is we redefined the position into one that is more " secretarial " and as such, was not what I know you were really looking for. I believe you're capable of more.

Please feel free to call me anytime, if I can help in any way.

Wes


Wesley Smith
Vice President, Medical Center Finance
NYU Medical Center
One Park Avenue
New York, N.Y.10016-5802
212-404-4301
Fax 212-404-3605

---

**From:**   Harris, Diane
**Sent:**   Monday, April 07, 2008 8:58 AM
**To:**   Smith, Wesley
**Subject:**   RE: Executive Assistant

Hello Wes,

Thank you again for interviewing me.  Although I understand I was not selected for the Executive Assistant's position, I still appreciate the chance you gave me to learn more about the Finance Department, especially Revenue Cycle.  Thank you for passing along my resume and for your recommendation to your management staff; I highly appreciate it. I enjoyed meeting you and I also hope you will keep me in mind for future opportunities to work directly with you should they arise.

In addition, I am always seeking ways to improve my interview skills.  I would greatly appreciate it if you have any suggestions that could help me improve in future interviews.  If you could take a moment to either email me or call me with any tips on how I can improve my candidacy for future opportunities, I would be grateful.  My phone number is x.30186.  If you do not have time, I of course understand.

Thank you so much again for your time.  If I can be of assistance in any way in the future, please only ask.

All the Best,

Diane

**From:** Smith, Wesley
**Sent:** Monday, April 07, 2008 8:22 AM
**To:** Harris, Diane
**Subject:** Executive Assistant

Hi Diane -

I wanted to let you know personally that I've selected an Executive Assistant after many weeks of interviews with both internal and external candidates.

I though both your resume and skills were truly impressive and I enjoyed getting to know you as well.

After some consideration, we modified the job functions of this position and felt it would not be a position that was nearly challenging enough for your experience and skill set. However, I have taken the liberty of forwarding your resume and my recommendation to my management staff as I think you would be a great asset to our department in an area that would utilize your talent and focus.

Thanks so much for applying and spending time with me.

Best Regards,
    Wes


Wesley Smith
Vice President, Medical Center Finance
NYU Medical Center
One Park Avenue
New York, N.Y. 10016-5802
212-404-4301
Fax 212-404-3605

# FW: Positions I have applied for through the COPP/Steps for Success Programs

Exhibit 3

10/03/08
**Harris, Diane**
To dharris271@msn.com
From:

    **Harris, Diane** (Diane.Harris@nyumc.org)
Sent: Fri 10/03/08 4:17 PM
To:   dharris271@msn.com

---

**From:** Harris, Diane
**Sent:** Tuesday, September 16, 2008 9:32 AM
**To:** Segarra, Inez
**Subject:** Positions I have applied for through the COPP/Steps for Success Programs

Hello Ms. Segarra,

I have compiled a list of <u>some</u> of the positions I have applied for.  I have been applying through the COPP since 2001:

<u>2008</u>:

006243 - submitted resume never contacted for interview
007599 - never contacted by HR
000000 - Executive Assistant to Kevin Hannifan - Carol Musto canceled three interviews with me - I received an interview after writing to K. Hannifan.

008115 - Residency Coordinator - applied - was never contacted by HR
008106 - Executive Assistant to Chair - applied - was never contacted by HR
007226 - Executive Assistant to Chair - applied - was never contacted by HR
007346 - Executive Assistant - interviewed with Wes Smith
007764- Executive Assistant

<u>2007</u>

007539 - Executive Assistant to Chair - applied - never contacted by HR
005708 - Project Assistant IV - applied - never contacted by HR

<u>2006</u>

002380 - Executive Assistant - submitted resume - never contacted by HR
003313 - Supervisor Support Services - submitted resume, -- never contacted by HR
003315- FGP Office Supervisor - never contacted by HR

<u>2005</u>

161152 - Executive Assistant - applied - never contacted by HR

2004

000000 - Executive Assistant to SVP Hospital Administration - never interviewed

This is the same pattern for the years 2001 - 2003 for which I submitted my resume for numerous positions.  I have only had 2 interviews from 2001 to the present: with Pediatrics in Bellevue and Wes Smith in Finance.  An e-mail for an Executive Assistant's position was recently sent out...even though I participate in the Steps for Success Program I did not receive the e-mail; I learned of it from another participant.

-------------------------------------------------------------
This email message, including any attachments, is for the sole use of the
intended recipient(s) and may contain information that is proprietary,
confidential, and exempt from disclosure under applicable law. Any
unauthorized review, use, disclosure, or distribution is prohibited. If you
have received this email in error please notify the sender by return email
and delete the original message. Please note, the recipient should check this
email and any attachments for the presence of viruses. The organization
accepts no liability for any damage caused by any virus transmitted by this
email.
==================================

Hotmail Print Message

## FW: Positions I have applied for through the COPP/Steps for Success Programs

From: **Harris, Diane** (Diane.Harris@nyumc.org)
Sent: Fri 10/03/08 4:17 PM
To: dharris271@msn.com

---

From: Harris, Diane
Sent: Tuesday, September 16, 2008 9:32 AM
To: Segarra, Inez
Subject: Positions I have applied for through the COPP/Steps for Success Programs

Hello Ms. Segarra,

I have compiled a list of some of the positions I have applied for. I have been applying through the COPP since 2001:

2008:

006243 - submitted resume never contacted for interview
007599 - never contacted by HR
000000 - Executive Assistant to Kevin Hannifan - Carol Musto canceled three interviews with me - I received an interview after writing to K. Hannifan.

008115 - Residency Coordinator - applied - was never contacted by HR
008106 - Executive Assistant to Chair - applied - was never contacted by HR
007226 - Executive Assistant to Chair - applied - was never contacted by HR
007346 - Executive Assistant - interviewed with Wes Smith
007764- Executive Assistant

2007

007539 - Executive Assistant to Chair - applied - never contacted by HR
005708 - Project Assistant IV - applied - never contacted by HR

2006

002380 - Executive Assistant - submitted resume - never contacted by HR
003313 - Supervisor Support Services - submitted resume, -- never contacted by HR
003315- FGP Office Supervisor - never contacted by HR

2005

161152 - Executive Assistant - applied - never contacted by HR

2004

000000 - Executive Assistant to SVP Hospital Administration - never interviewed

This is the same pattern for the years 2001 - 2003 for which I submitted my resume for numerous positions. I have only had 2 interviews from 2001 to the present: with Pediatrics in Bellevue and Wes Smith in Finance. An e-mail for an Executive Assistant's position was recently sent out...even though I participate in the Steps for Success Program I did not receive the e-mail; I learned of it from another participant.

---

This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is propr
========================================

**Harris, Diane**

*Exhibit 4*

| | |
|---|---|
| **From:** | Musto-Schiano, Carol |
| **Sent:** | Wednesday, April 16, 2008 5:52 PM |
| **To:** | Harris, Diane |
| **Subject:** | RE: Executive Assistant to the SVP in Hospital Administration |

I am so sorry we have not connected I am here now just out of mtgs and will be here tomorrow after 12 as I will be in mtgs all day

| | |
|---|---|
| **From:** | Harris, Diane |
| **Sent:** | Wednesday, April 16, 2008 3:56 PM |
| **To:** | Musto-Schiano, Carol |
| **Subject:** | Executive Assistant to the SVP in Hospital Administration |

*TH181*

Dear Mrs. Musto-Schiano,

Since we have not been able to speak by phone, I want to take a brief moment to introduce myself and to express my interest in the Executive Assistant to the SVP position in Hospital Administration.

I have worked in Hospital Administration since June of 2000. I currently support the offices of Kevin Kirchen and Carl Willemin, but I have supported each of the Vice Presidents at some point -- either directly or indirectly -- as a result I am familiar with every department affiliated with Administration.  With my management and administrative background coupled with knowledge of NYUMC policies and procedures, I can effectively assist Mr. Hannifan in his role as SVP and continue to contribute to success of the Hospital Administration Team.

I recently interviewed with Nelly Duchatellier and submitted my resume and last performance evaluation.  I was tested in Microsoft Word, Excel, PowerPoint, and Business Writing.  Those scores were given to Ms. Duchatellier as well.

I understand that your schedule is very busy and I will be on vacation next week, but I hope that at some point soon we will be able to discuss my qualifications for the position.

I look forward to speaking with you.

Sincerely,

Diane Harris



NEW YORK UNIVERSITY HOSPITALS CENTER
*Interoffice Communications*

**NYU Medical Center**

TO:        Kevin Hannifan, Sr. Vice President, Hospital Operations

FROM:    Diane Harris, Assistant to the Vice President, Hospital Operations

DATE:    May 5, 2008

RE:        Executive Assistant/Office Manager Position

---

Dear Kevin,

I am not sure if you are aware of my interest in meeting with you about my potential candidacy for the position of Executive Assistant/Office Manager which you are recruiting for.

I have taken all the relevant tests and interviewed with Nelly Duchatellier. I was supposed to have met with Carol Musto-Schiano, but she has not kept any of the three appointments we've scheduled.

I have gone through all the proper procedure and have not been granted an interview. I am attaching my resume for your review in hopes that we can meet to discuss my qualifications.

I look forward to hearing from you soon.

Sincerely,

Diane

**Harris, Diane**

| | |
|---|---|
| **From:** | Harris, Diane |
| **Sent:** | Friday, May 23, 2008 2:42 PM |
| **To:** | Musto-Schiano, Carol |

Carol,

Thank you for informing me of Kevin Hannifan's decision regarding the Executive Assistant's position in Hospital Administration.  Quite honestly I was surprised not to have been chosen as one of the two candidates to continue the interview process.

This being a promotional opportunity, coupled with my participation in the Steps for Success Program since 2001 without any success at advancement, your feedback detailing the reasons why I was not considered a strong enough candidate would be most beneficial.  Copies of my past performance evaluations  and testing scores would be most helpful as well.

Thank you so much.

Have a wonderful weekend.

Sincerely,

Diane Harris

353 W. 117th Street, Apt. 2B • New York, NY 10026

Exhibit 4

July 8, 2008

Carol Musto-Schiano
Director of Recruitment
Human Resources Department
1 Park Avenue, 16th floor
New York, NY 10016

Re: Follow-up to May 23, 2008 E-mail

Dear Mrs. Musto-Schiano:

I am contacting you to follow-up on my May 23rd e-mail which I have attached for your reference.

During our telephone conversation you informed me that I was not considered a viable candidate for the Executive Assistant/Office Manager position in Hospital Administration based upon the following reasons:

- Low Test scores in Microsoft Excel, PowerPoint, Word, Typing, and Business Writing

- Negative comments on performance evaluations

I disagree. I am once again, therefore, requesting copies of my testing scores from the years 2000 - 2008 to substantiate the claims listed above. I have been tested several times and each time I have been tested I have been told my scores were excellent. I am also requesting copies of my performance evaluations for the same years. I have submitted copies of my performance evaluations to your department since 2001, as required for participation in the Career Opportunity Posting Program, and have always met or exceeded standards.

Thank you for your time. Your expedited attention to these matters would be most appreciated.

Sincerely,

Diane Harris

Cc:     Reginald Odom
        Vice President, Employee Relations

( Also back of
in flofol )

# I n d i v i d u a l   T e s t   R e s u l t

| Summary Test Results for Diane Harris |
|---|
| Business Writing - Test1 |
| Taken on:  4/10/2008 1:21:46 PM |
| Score: 5 of a possible 8 |
| Time taken:  00:02:42 |
| Total Score:  62 % |

## Question Type Statistics

|  | Number of Questions | Number Correct | Total Percentage |
|---|---|---|---|
| Conciseness | 1 | 0 | 0.00 % |
| Grammar | 5 | 4 | 80.00 % |
| Organizational Approaches | 2 | 1 | 50.00 % |
| Total | 8 | 5 | 62.00 % |

## Question Level Statistics

|  | Number of Questions | Number Correct | Total Percentage |
|---|---|---|---|
| Advanced | 1 | 0 | 0.00 % |
| Basic | 4 | 4 | 100.00 % |
| Intermediate | 3 | 1 | 33.00 % |
| Total | 8 | 5 | 62.00 % |

# I n d i v i d u a l   T e s t   R e s u l t

| Summary Test Results for Diane Harris |
| --- |
| Typing Test |
| Taken on:  4/10/2008 1:18:35 PM |
| Words per minute (raw): 54   Mistakes: 1 |
| Time: 01:00 |
| Words per minute (adjusted): 53 |

# Individual Test Result

| Summary Test Results for Diane Harris |
|---|
| Microsoft Word 2000 - Normal User |
| Taken on:  4/10/2008 1:12:36 PM |
| Score: 27 of a possible 30 |
| Time taken:  00:13:39 |
| Total Score:  90 % |

## Question Type Statistics

|  | Number of Questions | Number Correct | Total Percentage |
|---|---|---|---|
| Application Basics | 10 | 10 | 100.00 % |
| Formatting a Document | 4 | 3 | 75.00 % |
| Formatting Text | 5 | 4 | 80.00 % |
| Mail Merge | 3 | 2 | 66.00 % |
| Productivity Tools | 6 | 6 | 100.00 % |
| Using Tables | 2 | 2 | 100.00 % |
| **Total** | 30 | 27 | 90.00 % |

## Question Level Statistics

|  | Number of Questions | Number Correct | Total Percentage |
|---|---|---|---|
| Advanced | 5 | 4 | 80.00 % |
| Basic | 15 | 14 | 93.00 % |
| Intermediate | 10 | 9 | 90.00 % |
| **Total** | 30 | 27 | 90.00 % |

# I n d i v i d u a l   T e s t   R e s u l t

| Summary Test Results for Diane Harris |
| :---: |
| Microsoft Excel 2000 - Normal User |
| Taken on:  4/10/2008 12:36:03 PM |
| Score: 25 of a possible 30 |
| Time taken:  00:14:07 |
| Total Score:  83 % |

## Question Type Statistics

|  | Number of Questions | Number Correct | Total Percentage |
| :--- | :---: | :---: | :---: |
| Application Basics | 12 | 12 | 100.00 % |
| Creating Charts | 3 | 1 | 33.00 % |
| Formatting Cells | 5 | 4 | 80.00 % |
| Formatting Worksheets | 6 | 6 | 100.00 % |
| Using Functions and Formulas | 2 | 1 | 50.00 % |
| Using Multiple Worksheet | 1 | 1 | 100.00 % |
| Using Multiple Worksheets | 1 | 0 | 0.00 % |
| **Total** | 30 | 25 | 83.00 % |

## Question Level Statistics

|  | Number of Questions | Number Correct | Total Percentage |
| :--- | :---: | :---: | :---: |
| Advanced | 3 | 2 | 66.00 % |
| Basic | 16 | 16 | 100.00 % |
| Intermediate | 11 | 7 | 63.00 % |
| **Total** | 30 | 25 | 83.00 % |

# I n d i v i d u a l   T e s t   R e s u l t

| Summary Test Results for Diane Harris |
|---|
| Microsoft PowerPoint 2000 |
| Taken on:  4/10/2008 12:57:53 PM |
| Score: 23 of a possible 30 |
| Time taken:  00:19:46 |
| Total Score:  76 % |

## Question Type Statistics

|  | Number of Questions | Number Correct | Total Percentage |
|---|---|---|---|
| Application Basics | 9 | 9 | 100.00 % |
| Building Slide Shows | 5 | 3 | 60.00 % |
| Building Slides | 5 | 3 | 60.00 % |
| Formatting the Presentation | 4 | 2 | 50.00 % |
| Inserting Slide Objects | 7 | 6 | 85.00 % |
| Total | 30 | 23 | 76.00 % |

## Question Level Statistics

|  | Number of Questions | Number Correct | Total Percentage |
|---|---|---|---|
| Advanced | 3 | 1 | 33.00 % |
| Basic | 11 | 9 | 81.00 % |
| Intermediate | 16 | 13 | 81.00 % |
| Total | 30 | 23 | 76.00 % |


Exhibit
5

## Harris, Diane

| | |
|---|---|
| **From:** | Harris, Diane |
| **Sent:** | Friday, June 30, 2006 7:03 PM |
| **To:** | Harris, Diane; Willemin, Carl; Kirchen, Kevin; Kreuscher, Irene; Iberger, Sandra; Horrocks, Amy |
| **Cc:** | Harney, John; rosario, irma; Odom, Reginald |
| **Subject:** | RE: Coverage for Dr. Rackow |

Mr. Odom,

Apologies, it had been my intention to include you in this e-mail as well.

-----Original Message-----
**From:** Harris, Diane
**Sent:** Fri 6/30/2006 5:31 PM
**To:** Willemin, Carl; Kirchen, Kevin; Kreuscher, Irene; Iberger, Sandra; Horrocks, Amy
**Cc:** Harney, John; rosario, irma
**Subject:** RE: Coverage for Dr. Rackow

Actually I think this to be a bit much.  I am responsible for 9 lines as is:

x. 35505

x. 35503

x. 73501

x. 73500

x. 35500

x. 35576

x. 32020

x. 35806

x. 30186

I am also responsible for mail distribution and handling visitors as well as cover the 3 VP's who will be in the office on Monday.

It has been my understanding that at least 2 people are to cover the office at any one time.  This has changed apparently, based upon who it is who needs to be off.  I am completely perplexed as to what justification there could be for me to be alone again on Monday.  It was made very clear to me by Amy that I should not expect help from Ananda as she is not an administrative assistant (I had asked Ananda on Thursday morning if she would cover the phones for 15 minutes while I went to security and the cashiers).

9/16/2008

They did however agree that she could help from 3-5 which never happened either as Ananda came to me and said her voice was weak and she would not be able to answer phones (yet she carried on a full and very strong conversation with Ally).

As Monday is a regular work day and I expect it will be business as usual, I am confused as to how every assistant (both in HCC 15 and Tisch 181) other than myself have been allowed to take the day. Just 3 weeks ago, I was told 2 days before the weekend that I would be unable to use June 5 my scheduled day off, I would have to cancel, since it required more than 1 person to be in the office and that it was too short notice to get anyone to help cover.

Can someone please explain?  Make me understand what is going on?

Are there one set of rules for some and a different set for others?  I have been here quite a while and this is getting progressively worst.  As an assistant who has been with this office for a number of years. If ranked, I would have seniority, yet, when it comes to flexibility, I am treated as amongst the least. Although, I brought in a doctor's letter explaining my son's illness during the transit strike, I was docked the day. The following day, after bringing my son to the doctor, I went so far as to bring my sick son with his eyes running & oozing to work with me, since I was verbally told I was "selfish" when I phoned in to explain my son was ill…yet I was still docked a day…how does this happen?  Am I seriously expected to openly embrace such blatant unfairness with warmth and joy?

Someone please make me understand.

-----Original Message-----
**From:** Souffront, Maria
**Sent:** Friday, June 30, 2006 3:58 PM
**To:** Harris, Diane
**Subject:** Coverage for Dr. Rackow

Hi Diane,

I understand from Sharon that you will be the Assistant that will be in on Monday, July 3rd.  I don't know if Sharon or John have spoken to you yet, but I am leaving soon and wanted to make sure you had all the information.

9/16/2008

Dr. Rackow is requesting that his phones get forwarded to Hospital Administration for Monday, July 3rd since there will be no one on this floor.  So I am leaving all contact information for him if you need to reach him.  It should be quiet on Monday and I don't really expect that there will be many, if any calls for him.  Also, these contact numbers should only be used if it's urgent or it's a trustee calling.

Beeper 917-812-0417

Home 212-779-9712

You can also send him an email as he always checks his blackberry.  If you need to contact me for any reason, I can be reached at 917-439-9640.

Thanks and have a great weekend.

Maria S. Souffront

Executive Assistant to

  Eric C. Rackow, M.D.

  President

NYU Hospitals Center

(212) 263-2679

Email: maria.souffront@nyumc.org

9/16/2008

**Carr, Denise**

Exhibit 6

| | |
|---|---|
| **From:** | Kreuscher, Irene |
| **Sent:** | Thursday, July 06, 2006 4:35 PM |
| **To:** | Carr, Denise; Harris, Diane; rosario, irma; Willemin, Carl; Charles, Maria; Goldberg, Allyson; Horrocks, Amy; Iberger, Sandra; Kirchen, Kevin |
| **Subject:** | RE: Hospital Admin. Staff Meeting / Canceled |

The first step in addressing any concern is talking to the VP to whom you report.  It should never wait for a group meeting.  Please begin by taking this off email and meeting ASAP one on one with your respective VP.  We would never want this kind of thing to fester.

Irene Kreuscher
Vice President
Hospital Operations, NYUHC

> -----Original Message-----
> **From:** Carr, Denise
> **Sent:** Thursday, July 06, 2006 3:52 PM
> **To:** Harris, Diane; Kreuscher, Irene; rosario, irma; Willemin, Carl; Charles, Maria; Goldberg, Allyson; Horrocks, Amy; Iberger, Sandra; Kirchen, Kevin
> **Subject:** RE: Hospital Admin. Staff Meeting / Canceled
>
> This is also of a great concern to me.
>
> This is an office wide issue that really needs to be addressed sooner than later,
>
> Diane is right, it is not just about office coverage, it is about the way we are treated as whole.
>
> I think that September is too long to wait.
>
> Denise

>> -----Original Message-----
>> **From:** Harris, Diane
>> **Sent:** Thursday, July 06, 2006 3:29 PM
>> **To:** Kreuscher, Irene; rosario, irma; Willemin, Carl; Carr, Denise; Charles, Maria; Goldberg, Allyson; Horrocks, Amy; Iberger, Sandra; Kirchen, Kevin
>> **Subject:** RE: Hospital Admin. Staff Meeting / Canceled
>>
>> Actually, the things I have in mind for discussion, not only concern me…they overall effect everyone in this office. If these are of no great concern to anyone else, or of no concern to anyone else, that these things are a concern to me…then yes, I will once again speak to Carl.

>>> -----Original Message-----
>>> **From:** Kreuscher, Irene
>>> **Sent:** Thursday, July 06, 2006 2:23 PM
>>> **To:** Harris, Diane; rosario, irma; Willemin, Carl; Carr, Denise; Charles, Maria; Goldberg, Allyson; Horrocks, Amy; Iberger, Sandra; Kirchen, Kevin
>>> **Subject:** RE: Hospital Admin. Staff Meeting / Canceled
>>>
>>> Diane,
>>>  I'd suggest setting up time for you, Carl and Irma to discuss your concerns. Thanks.
>>> Irene

-----Original Message-----
**From:** Harris, Diane
**Sent:** Thu 7/6/2006 1:14 PM
**To:** rosario, irma; Willemin, Carl; Carr, Denise; Charles, Maria; Goldberg, Allyson; Horrocks, Amy; Iberger, Sandra; Kirchen, Kevin; Kreuscher, Irene
**Cc:**
**Subject:** RE: Hospital Admin. Staff Meeting / Canceled

Are you serious???  Frankly …September is a long ways off.  If my vote counts, I believe it best to address these concerns sooner than 2 months from now.  I thought this Friday's meeting would address some of the issues posed in my 6/30 e-mail, which are matters which I think all would agree should/could not wait for such an extensive period of time.

-----Original Message-----
**From:** rosario, irma
**Sent:** Thursday, July 06, 2006 12:46 PM
**To:** Willemin, Carl; Carr, Denise; Charles, Maria; Goldberg, Allyson; Harris, Diane; Horrocks, Amy; Iberger, Sandra; Kirchen, Kevin; Kreuscher, Irene
**Subject:** Hospital Admin. Staff Meeting / Canceled

Carl will be out tomorrow, and we would like to have everyone present at these meetings, therefore, tomorrow's meeting has been canceled.

I have looked at the calendars in an attempt to reschedule this meeting, but it is an impossible task, as everyone will be trying to catch a little  r & r during the next few weeks.  Having said this, I propose we use 30 minutes of birthday gathering time on September 22nd .  We can eat, drink and be merry and than settle down to discuss office business.


Thanks,
Irma

*what a Social Butterfly. The 4th already passed; what more r+r do they need?*

4/26/2007

 **Langone Medical Center**   *Exhibit 7*

**HUMAN RESOURCES**

To:        All Medical Center Faculty and Staff

From:     Reginald Odom,
          Vice President, Employee & Labor Relations

RE:        NYU Langone Medical Center Policies

Date:      May 26, 2009

---

Enclosed are the Human Resources Reference Guide to Significant Policies and 2009 Equal Employment Opportunity Policy Statements for New York University School of Medicine and NYU Hospitals Center (jointly referred to as the "NYU Langone Medical Center"). These policy statements include:

- Equal Opportunity/Affirmative Action Policy
- Statement of Policy on Harassment Prevention
- EEO Policy and Self Identifications Invitation to Persons with Disabilities and Covered Veterans.

In addition we are also providing you with the Medical Centers Alcohol and Drug Use Policy.

NYU Langone Medical Center places a high priority on ensuring these workplace polices are adhered to. Please take time to familiarize yourself with them.

If you should have any questions regarding any of these policies, please contact Employee Relations at (212) 404-3857.

 **Langone Medical Center**

**HUMAN RESOURCES**

To:        All Faculty, Staff and Applicants for Employment

Subject:   NYU LANGONE MEDICAL CENTER EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION
           POLICY

Date:      January 1, 2009

NYU Hospitals Center and New York University School of Medicine (jointly referred to as the "NYU Langone Medical Center") are committed to a policy of equal treatment and opportunity in every aspect of its relations with applicants, staff and faculty.

It shall continue to be the NYU Langone Medical Center's policy to recruit, hire and train persons in all positions without regard to race, color, creed, religion, sex, sexual orientation, marital or parental status, national origin, citizenship status, age, veteran status or disability.  All decisions shall be based on objective employment criteria in furtherance of the principle of equal employment opportunity.

Further, it shall be the continuing policy that all promotions and transfer decisions are made in accordance with principles of equal employment opportunity by utilizing valid requirements in all employment actions.  Finally, all personnel actions such as compensation, benefits, leaves of absence, granting of tenure, layoffs, return from layoff, tuition assistance and recreational programs shall be administered without regard to race, color, creed, religion, sex, sexual orientation, marital or parental status, national origin, citizenship status, age, veteran status or disability.

The Vice President of Employee and Labor Relations has overall responsibility for monitoring equal opportunity compliance and affirmative action programs and for implementing and administering these programs through the senior leadership of Human Resources in their functional areas of responsibility.  The Vice President of Employee and Labor Relations shall conduct utilization analyses, establish goals and timetables, monitor Human Resources policies and procedures to ensure non-discriminator practices, and investigate and handle all equal employment opportunity/affirmative action complaints.  The Director of Recruitment and Staffing is responsible for applicant flow, adverse impact analyses, and recruitment and placement.  The Directors of Compensation and Benefits are responsible for the maintenance and development of equitable non-discriminatory practices in all compensation and benefit programs.  The Executive Director of Organizational Development and Learning is responsible for ensuring that all staff development and training activities are conducted in compliance with pertinent equal employment opportunity regulations.

Chairs, Administrators, Directors, Department Heads and Supervisors are responsible for ensuring that all policies and procedures established to assure equal opportunity are adhered to in all employment and personnel actions under their jurisdiction.

It is the responsibility of the administrative and supervisory staff to ensure that the equal opportunity policy is understood and implemented.  Further, it is the responsibility of all personnel, supervisory and non-supervisory, to assure the continuing success of the policy.  Any individual who has questions or suggestions regarding our policy or program can discuss the matter with Reginald Odom, Vice President, Employee and Labor Relations at (212) 404-3871.

*Nancy Sanchez*

Nancy Sanchez
Senior Vice President and Vice Dean
Human Resources

 **Langone Medical Center**

**HUMAN RESOURCES**

To:       All Faculty and Staff

Subject:   GENERAL NOTICE: HARASSMENT PREVENTION POLICY STATEMENT

Date:      January 1, 2009

It is the policy of NYU Hospitals Center and New York University School of Medicine (jointly referred to as the "NYU Langone Medical Center") to ensure that a workplace environment free of harassment is provided for all its Faculty and Staff.  It is our belief that fostering an atmosphere of respect and civility is critical to the success of our institution and harassment is contrary to these values and the mission of the Medical Center and therefore will not be tolerated.

Further, it is the responsibility of all supervisory personnel to maintain a work environment free of harassment, and it is the responsibility of our Faculty and Staff to avoid contributing to an offensive or hostile work environment, but rather to support an environment of mutual respect and tolerance for diverse persons, groups, and ideas.

Consistent with the Medical Center's non discrimination policy statement, this Harassment Prevention policy includes cases where conduct is based on race, color, religion, sex, sexual orientation, marital or parental status, national origin, citizenship status, age, veteran status, disability or any other protected characteristic.  Any employee that believes he/she is being harassed should notify his/her manager and/or Employee Relations Manager immediately.  An investigation into issues brought forth will be conducted in as confidential of a manner as possible.   Retaliation of any sort in response to an individual bringing forth an issue is strictly prohibited.

If you have any questions regarding this memorandum or our policy, please contact your Employee Relations Manager at (212) 404-3857 or the Vice President, Employee and Labor Relations at (212) 404-3871.

*Nancy Sanchez*

Nancy Sanchez
Senior Vice President and Vice Dean
Human Resources

 **Langone Medical Center**

**HUMAN RESOURCES**

To:          All Faculty, Staff and Applicants for Employment

Subject:   EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION POLICY
             ANNOUNCEMENT AND SELF-IDENTIFICATION INVITATION TO
             PERSONS WITH DISABILITIES AND COVERED VETERANS

Date:       January 1, 2009

In accordance with the Americans With Disabilities Act, Sections 503 and 504 of the Rehabilitation Act
of 1973 (as amended), Section 4212 of the Vietnam Era Veterans Readjustment Assistance Act of 1974
(as amended) and the New York City Human Rights law and all subsequent amendments and regulations
issued to protect the rights of persons with disabilities and covered veterans and the commitment of NYU
Hospitals Center and the New York University School of Medicine, (jointly referred to as "NYU
Langone Medical Center") to provide reasonable accommodations for and assurance of non-
discrimination toward qualified individuals with disabilities and covered veterans, it is policy that:

- No activities, programs, services, aids or benefits administered by NYU Langone
  Medical Center shall exclude from participation, deny, or provide different or
  separate benefits, programs, or services to, or otherwise limit a qualified person with
  a disability or covered veteran in the enjoyment of any right, privilege, advantage or
  opportunity enjoyed by others.

- There will be no recruitment, employment, admissions, or provision of services
  discrimination against any member of Faculty, Staff, applicant, student or patient
  because of physical or mental disability in regard to any position, program, or
  services for which the employee, applicant, student or patient is qualified.

- Affirmative Action will be taken to employ and advance in employment qualified
  persons with disabilities (including reasonable accommodations to the limitations of
  these individuals) and covered veterans.

## INVITATION TO SELF-IDENTIFY

NYU Langone Medical Center is a Government contractor subject to Section 503 and 504 of the
Rehabilitation Act of 1973, as amended, and the Vietnam Era Veterans' Readjustment Assistance Act of
1974, as amended, which requires Government contractors to take affirmative action to employ and
advance in employment qualified disabled, disabled veterans and veterans covered by the Act.  If you are
disabled, a disabled veteran or veteran covered by the act and would like to be considered under the
affirmative action program, please contact your Employee Relations Manager or Reginald Odom, Vice
President, Employee and Labor Relations at (212) 404-3871. You may inform us of your desire to benefit
under the program at this time and/or at any time in the future. This information will assist us in placing
you in an appropriate position and in making accommodations for your disability if you are disabled or a
disabled veteran.  NYU Langone Medical Center makes reasonable accommodations for the physical and
mental limitations of employees.

CONTINUED

If you are disabled, a disabled veteran, a veteran of the Vietnam era, or other covered veteran, we would like to include you under the affirmative action program. If you are disabled or a disabled veteran, it would assist us if you tell us about (i) any special methods, skills, and procedures which qualify you for positions that you might not otherwise be able to do because of your disability so that you will be considered for any positions of that kind, and (ii) the accommodations which we could make which would enable you to perform the job properly and safely, including special equipment, changes in the physical layout of the job, elimination of certain duties relating to the job, provision of personal assistance services or other accommodations.

Submission of this information is voluntary and refusal to provide it will not subject you to any adverse treatment. Information you submit will be kept confidential, except that (i) supervisors and managers may be informed regarding restrictions on the work or duties of individuals with disabilities and disabled veterans, and regarding necessary accommodations; (ii) first aid and safety personnel may be informed, when and to the extent appropriate, if the condition might require emergency treatment; and (iii) Government officials engaged in enforcing laws administered by OFCCP or the Americans with Disabilities Act, may be informed. The information provided will be used only in ways that are not inconsistent with Section 503 and 504 of the Rehabilitation Act of 1973, as amended, and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended.

**Definitions:**

The term "veteran of the Vietnam era" refers to a person who served on active duty for a period of 180 days, and was discharged or release therefrom with other than a dishonorable discharge, if any such active duty occurred in the Republic of Vietnam between February 28, 1961, and May 7, 1975, or between August 5, 1964, and May 7, 1975, in all other cases.   The term also refers to a person who was discharged or released from active duty for a service connected disability if any part of such active duty was performed in the Republic of Vietnam between February 28, 1961, and May 7, 1975, or between August 5, 1964, and May 7, 1975, in all other cases.

The term "special disabled veteran" refers to a veteran who is entitled to compensation (or who, but for the receipt of military retired pay, would be entitled to compensation) under laws administered by the Department of Veterans Affairs for a disability rated at 30% or more, or rated at 10% to 20% in the case of a veteran who has been determined to have a serious employment handicap.  The term also refers to a person who was discharged or released from active duty because of a service connected disability.

The term "other covered veteran" means any other veterans who served on active duty during a war in a campaign or expedition for which a campaign badge has been authorized.

The Affirmative Action Program may be viewed during regular business hours at the Human Resources Department.  Please contact Reginald Odom, Vice President, Employee and Labor Relations at (212) 404-3871.

Nancy Sanchez
Senior Vice President and Vice Dean
Human Resources

Exhibit 8

**NYU** **Langone Medical Center**

**Reginald D. Odom**
Vice President
Employee and Labor Relations
Human Resources

Ms. Diane Harris
353 W 117 Street, Apt 2B
New York, NY 10026

Dear, Ms. Harris,

It has come to our attention that you are no longer adhering to the treatment plan developed for you as part of the administrative referral to Corporate Counseling. This referral was made by your supervisors Kimberly Glassman, Senior Vice President of Patient Care Services & Chief Nursing Officer, and Kevin Kirchen, Vice President of Strategic Area Program Development, to the Employee Assistance Plan, which is managed by Corporate Counseling Associates.

As a reminder, during your prior months at work you engaged in what was believed to be inappropriate, angry and antagonistic behavior that is unacceptable in the workplace. As opposed to being immediately terminated for these actions you were directed to seek evaluation and treatment through Corporate Counseling Associates, and you were informed that you would not be allowed to return to work until such time as they provided us with clearance for your return. On Friday, January 8th we were informed by Corporate Counseling that you canceled your appointment, and therefore were no longer following your treatment plan.

This letter is to inform you that your failure to re engage with Corporate Counseling as previously directed no later than Friday January 15th, 2010 will result in the termination of your employment form NYU Langone Medical Center.

If you have any questions regarding this matter please contact 212-404-3871.

Sincerely,

Reginald Odom
Vice President, Employee & Labor Relations

cc: Kimberly Glassman
    Kevin Kirchen
    Alison Brehm



# DIANE HARRIS

353 W. 117th Street Apt 2B
New York, New York 10026

Home: 212-865-1467

January 15, 2010

*Exhibit 9*

Mr. Reginald D. Odom, Vice President
Employee and Labor Relations, Human Resources
NYU Langone Medical Center
1 Park Avenue, 16th Floor
New York, NY 10016

Dear Mr. Odom,

In response to your overnight letter (not dated), which I received at 5:30 p.m. on Thursday, January 14, 2010, I believe the following to be correct:

I have been forced to disclose personal and medical information to Corporate Counseling Services (CCS), or else be terminated effective today, January 15, 2010. I contacted Allison Franklin, of CCS and will speak with her again next week, yet your letter does not reflect what it is I have been requesting from NYU Langone Medical Center to send me in writing since December 30, 2009.

I have been totally compliant with CCS since December 14, 2009 and only ceased to do so on Tuesday, January 5, 2010 (not January 8) after learning I was locked out of my work computer and banned from getting personal items from my work area and that my paycheck was approximately $1,000 short, and the physician would not see me unless I paid $70 (billing me was refused). I have continually asked for any and all communication to be put in writing since December 30, 2009; first to Nicole Delts, then to Reginald Odom.

It is my understanding, according to Alison Franklin of CCS, that NYU Langone Medical Center is requiring me to see a psychiatrist, yet you have not provided me with specific detailed reasons this is requested. Please provide me with the dates of incidents, persons involved, and more importantly, why if these incidents occurred, it is only now that I am learning of them. Since I do not recall having ever been written or verbally reprimanded, and wholeheartedly deny allegations of inappropriate, angry, and antagonistic behavior, any such documentation would expedite what it is you are requesting.

I was ambushed and forced to leave the office on December 11, 2009 by Kimberly Glassman and Kevin Kirchen after being spoken to in a manner totally inappropriate and as I was trying to complete an e-mail detailing events moments earlier; I left personal effects behind, which I would need. Since December 22, 2009 I have continually asked Alison Brehm, Allison Franklin, Nicole Delts (since 12/30/09), and finally Reginald Odom, to allow me to retrieve some of my personal items. If I am not terminated, why is Mark Paruda involved? Why disability is the only option I was offered re: returning to work (12/30/09 by Nicole Delts) as I had not been diagnosed as disabled? Why have I not been allowed to gather my personal items? I was also locked out of my work computer and unable to check my pay-stubs or e-mail, I have been unable to get my paper stubs which I need to conduct personal business. How will I be paid?

Please send a more detailed account of the alleged incidents referred to in your letter, answers to the above questions, and written instructions of what you require of a psychiatrist in order to facilitate my return to the position I have held since June 2000.

Sincerely,

Diane Harris

U.S. Postal Service™

CERTIFIED MAIL™ RECEIPT

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.44 | 0047 |
| Certified Fee | $2.80 | 07 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | $5.34 | 01/15/2010 |

Sent To
Reginald Odom

Street, Apt. No.; or PO Box No.
1 Park Ave 16th fl.

City, State, ZIP+4
NY NY 10016

PS Form 3800, August 2006          See Reverse for Instructions

Customer Copy
***************
***************

 

NYU Langone Medical Center

Exhibit 10

January 19, 2010

Diane Harris
353 W 117 Street, Apt 2B
New York, NY 10026

Dear Ms. Harris,

Your employment is terminated effective Friday, January 15, 2010 as a result of your inappropriate, angry and antagonistic behavior previously demonstrated toward your supervisors.

Sincerely,

Reginald D. Odom
V.P., Employee & Labor Relations


**Langone Medical Center**

Exhibit 11

**DANIEL T. DRIESEN**
*Associate General Counsel, Office of Legal Counsel*

April 6, 2010

***VIA OVERNIGHT MAIL***

Patricia Araujo
Equal Employment Opportunity Commission, NYDO
33 Whitehall Street, 5th Floor
New York, NY 10004

     Re: Diane Harris v. NYU Langone Medical Center
        EEOC Charge No.: 520-2010-01071

Dear Ms. Araujo:

  I am the attorney at NYU Langone Medical Center responsible for labor and employment matters. On behalf of NYU Hospitals Center[1] (hereinafter "NYUHC" or the "Hospital"), please accept this letter and the accompanying documents in response to the above-referenced Charge filed by our former employee, Diane Harris ("Complainant"). This letter sets forth the relevant facts and arguments that demonstrate complainant was not subject to discrimination based on her race, religion, age or perceived disability under Title VII, the Age Discrimination in Employment Act, or the Americans with Disabilities Act, respectively. In addition, complainant was not subject to retaliation under these statutes because she did not engage in protected activity and because, as is applicable to all claims, the employer's actions were legitimate and not based upon any protected activity or characteristic. Accordingly, the Charge should be dismissed.

## I.  BACKGROUND AND GENERAL INFORMATION

  NYU Hospitals Center is a not-for-profit hospital corporation and one of the nation's premier centers of excellence in health care and medical research. It consists of several hospitals, research and treatment centers, including Tisch Hospital, the Rusk Institute of Rehabilitation Medicine, NYU Hospital for Joint Diseases, and the Clinical Cancer Center. Together these facilities provide a range of superb clinical care and research matched by few medical centers throughout the world. They are renowned for their treatment and diagnostic units and, by their affiliation with NYU School of Medicine, for their exceptional research and training.

---

[1] NYU Hospitals Center was Ms. Harris' employer and is the legal entity amenable to suit, not NYU Langone Medical Center.

Patricia Araujo                                                                    April 6, 2010
EEOC – New York District Office                                                         Page 2

## II.   COMPLAINANT'S EMPLOYMENT AT THE HOSPITAL

On or about June 26, 2000, complainant began her employment with the Hospital as an Administrative Assistant.  Complainant was one of approximately four administrative assistants or support personnel assigned to the suite of executive offices located in Room 181 of Tisch Hospital.  The executives in this suite were at various times Vice Presidents and Senior Vice Presidents responsible for hospital administration.  Over the course of her employment with NYUHC, there was considerable turnover in both the executives housed in the suite and the assistants and other staff who supported them.  As a result of these changes, there were numerous occasions when the assignments of the assistants were varied to more evenly balance the workload.  Assistants were not pooled, but rather assigned to either one or two executives depending upon the volume of support each executive generally required.  Accordingly, at various times complainant and her colleagues worked for different Vice Presidents or Senior Vice Presidents, but the office consistently sought to allocate assignments in an even-handed manner.  On or about December 1, 2006, complainant's title, along with another coworker's, was modified to Assistant to the Vice President, Hospital Administration, to more accurately reflect her duties.

The Hospital does not dispute that complainant generally was a satisfactory performer and at times exceeded that measure.  Complainant's performance resulted in annual merit increases each year of her employment, ranging from 2.5% to 4%.  In addition to merit raises, the Hospital conducted several compensation reviews during complainant's employment, and in 2004 and 2009, granted complainant marked salary increases of approximately 10 and 14.5%, respectively.  *See* e-mails annexed hereto as Exhs. "1" and "2."  Complainant never received less than a 2.5% increase and consistently was at or significantly above the midpoint of the salary range for her title.

Despite her positive performance evaluations, complainant's tenure at the Hospital also was marked by periods of disoriented and irrational behavior.  Twice prior to her December 11, 2009 episode, complainant requested and was granted leave to attend to psychological treatment.  During the episode in 2008, Vice Presidents Carl Willemin and Kevin Kirchen assisted and directed her to the employee health services for evaluation.  After each extended medical leave, during which it is believed that she received both in-patient and out-patient treatment, complainant was welcomed back to her position without incident after she was cleared to return to work.

Complainant also complained in the past about inequities in pay and title when compared to her colleagues in the Hospital Administration office.  These complaints in 2007 and 2008 were largely based upon seniority, including others receiving transfers that she felt should go to her as the longest tenured assistant.  Complainant's compensation disputes were reviewed, and as mentioned, twice resulted in additional salary increases that took her to the upper end of her title range.  Other reviews resulted in a finding that her salary was appropriate.  *See* Exh. "3."  Complainant's also made allegations about not receiving a transfer or promotion, most recently in 2008, premised upon her race, color and having "a bona fide disability."  *See* Exh. "4."

Patricia Araujo                                                              April 6, 2010
EEOC – New York District Office                                             Page 3

Complainant also contended that her alleged adverse treatment was the result of her role in uncovering time falsification by another co-worker, which resulted in that employee's termination. Complainant's allegations were received, reviewed, but not substantiated.

In October 2009, complainant was issued an annual performance review for the period covering September 2008-09. Her review was above average (4 out of 5). Around the time the evaluation was issued, her performance began to deteriorate. Complainant missed appointments, committed errors in scheduling meetings and had an increase in lateness and absences. Complainant's behavior also became erratic and combative.

On October 16, 2009, Vice Presidents Kevin Kirchen and Dr. Kimberly Glassman, the two executives supported by complainant, met at her request to discuss the format by which complainant's performance evaluation discussion would take place. Complainant asked that, rather than provide scores for each category, Mr. Kirchen and Dr. Glassman engage in a participatory conversation with her to discuss each category and reach a score by consensus. Although unusual, Mr. Kirchen and Dr. Glassman consented to this request and agreed to meet again on October 23, 2009.

On October 23, 2009, complainant arrived late to work. She appeared at the review meeting carrying an 8-by-10 graduation photo. Asked about the photo, complainant said that she brought it so they could see her as a person. When the Vice Presidents commenced to seek her input on each of the review categories, complainant expressed confusion and claimed that they were "ganging up" on her. Complainant was reminded that she had requested this format, but she nevertheless stated that she did not desire or appreciate it. Complainant also did not seem to understand that the annual performance appraisal was for the prior year's performance, stating "you mean anything I did good in the past doesn't count here?" Because complainant was clearly unable or unwilling to proceed as she had previously requested, the meeting was deferred to November 12, 2009, so that the vice presidents could provide her a standard review.

On November 12, 2009, complainant again met with Mr. Kirchen and Dr. Glassman to complete the discussion of her review. Complainant was informed that she was given a "4" for the evaluation period ending in September, but that if her recent performance were included, it would likely have been a "3." Although she received a 4 out of 5, complainant was not satisfied with her score. Mr. Kirchen and Dr. Glassman discussed the recent deficiencies complainant exhibited, including those mentioned above. They stated that complainant did not seem fully engaged in her job and that she needed to re-engage. Complainant also was specifically criticized about her cell phone. Recently her ringer had been set extremely loud and she was receiving calls frequently throughout the day. Complainant was asked to change her ringtone to vibrate. At some point after completing her performance review, complainant turned off her cell phone ringer, but soon thereafter brought a radio to work.

Shortly after this discussion, complainant sought a transfer to a position as Executive Assistant to one of the Chair of a different department. Placement for this position was being handled by Staffing Specialist Jayme Gruetzmacher. As reflected in the attached e-mail

Patricia Araujo                                                                April 6, 2010
EEOC – New York District Office                                                    Page 4

communications, Ms. Gruetzmacher made great effort to invite complainant to submit her resume and complete the application process, since the position was to be filled immediately. *See* Exh. "5." On December 9, 2009, complainant withdrew as a candidate because she could not comply with the deadlines. *See* Exh. "6." The next day, however, complainant sent Ms. Gruetzmacher another e-mail asking that the department's deadlines to fill the position not been imposed because she did not want to be rushed and wanted time to prepare. *See* Exh. "7." Ms. Gruetzmacher replied that all she wanted was a resume and a time to meet.

On December 11, 2009, complainant responded to this request by placing the onus on Ms. Gruetzmacher to provide her the resume to be used. *See* Exh. "8." Notwithstanding the oddity of the request, Ms. Gruetzmacher sent complainant the latest copy of complainant's resume she could find, asked complainant to add whatever additional items she desired and made herself available to complainant to further discuss the vacancy. *See* Exh. "9." Despite this extraordinary effort, complainant did not complete the application process. Rather, complainant's bizarre behavior escalated.

On December 12, 2009, complainant again was playing her radio at work. Her music was audible in the offices and her supervisor, Mr. Kirchen, asked that she remove the radio. Complainant asked why. In light of the obvious inappropriateness of the activity (and having already discussed with her the disruption caused by her loud cell phone ringer and usage) Mr. Kirchen responded by saying, "Diane, its common sense." Complainant became extremely agitated by this statement. She yelled at Mr. Kirchen and gesticulated violently such that food flew from her mouth. Mr. Kirchen sought to contain the situation and asked that they speak in his office. Once relocated, complainant continued to act in an insubordinate matter, shouting disrespectfully at her boss. In the middle of her diatribe, complainant said that she needed to "talk to her father," whereupon she dropped to her knees and prayed loudly for "Jehovah to give [her] strength." Trying to quell complainant's agitated behavior, Mr. Kirchen left his office.

Mr. Kirchen immediately conferred with Dr. Glassman and another executive regarding how to respond to complainant's irrational and insubordinate outbursts. They contacted the Employee Relations Department and were advised to send complainant home. Mr. Kirchen and Dr. Glassman went to speak with complainant at her desk and instructed her to go home for the day. Complainant did not wish to leave and requested that they speak in private. When they entered Dr. Glassman's office, complainant began to loudly berate both vice presidents, claiming to have been "disrespected." Complainant once again dropped to her knees and loudly and sarcastically "thanked for Jehovah for not making me as perfect as Kevin and Kim." Dr. Glassman told complainant her actions were inappropriate, to which complainant responded that she could "pray whenever [she] wanted."

After multiple requests for her to leave, complainant went home without loss of pay. Upon her return to work on Monday morning, complainant was directed to Employee Health Services for a fitness for duty evaluation. Rather than terminate complainant for her inappropriate and insubordinate behavior, complainant was referred to the Employee Assistance

Patricia Araujo                                                    April 6, 2010
EEOC – New York District Office                                        Page 5

Program for evaluation and treatment.  Complainant was told that she would not be permitted to return until Corporate Counseling deemed her fit for duty and cleared her to do so.

On January 8, 2010, the Employee Relations Department was informed that complainant cancelled her appointment and was no longer following the treatment plan.  Complainant was directed by letter to resume treatment or she would be terminated.  Complainant refused to do so and her employment was terminated on January 19, 2010.

## III.    COMPLAINANT'S ALLEGATIONS

Complainant's allegations are unclear and unsubstantiated.  In her scattershot Charge, complainant alleges that she was denied promotions and raises going back to 2000 and that these actions were discriminatory and retaliatory in nature.  Complainant falsely contends that she was limited to 2% salary increases during the period 2000-05.  Complainant also contends that the retaliation she purportedly suffered was for her role in the termination of Irma Rosario in 2008, after complainant uncovered Ms. Rosario's improper timekeeping practices.  She alleges that her failure to be promoted or transferred was somehow discriminatory or retaliatory.  However, one of the positions she failed to receive was granted to an African-American female believed to be Christian (her office manager, Ms. Peterkin), and as noted above, complainant withdrew her application for another position she sought, although she later attempted to remain a candidate but refused to produce a resume.  In her Charge, complainant acknowledges much of the conduct that resulted in her removal from the workplace in December 2009, but it appears that she is unable to appreciate the impropriety of her behavior.  Complainant provides no evidence of discriminatory or retaliatory animus, either direct or implied.  Rather it is seemingly the mere membership in protected classes that is her basis for the assertions in her Charge.  Overall, complainant's allegations, where not untimely, are wholly without merit and do nothing to obviate the insubordinate conduct for which she was ultimately terminated after her refusal to complete counseling.

## IV.    ARGUMENT

Complainant has failed to state a prima facie case for discrimination.  To meet her prima facie burden, complainant must demonstrate that she was a member of a protected group, suffered an adverse employment action, and that the decision to take the adverse employment action was based upon her protected status.  *See Reeves v. Johnson Controls World Servs., Inc.* 140 F.3d 144 (2d Cir. 1998).

It is undisputed that complainant's termination is an adverse employment action. Facially absent from the Charge, however, is any basis upon which the EEOC can conclude that her ager race, religion or disability (actual or perceived) was causally related to respondent's decision to terminate her employment.  Complainant provides no evidence that her employers were motivated by animus related to her age or race.  Her religion was only referenced because part of her bizarre and aggressive behavior towards her supervisors including falling to her knees

and invoking God while berating them, including sarcastically thanking Him for not making her "perfect like Kevin and Kim." Complainant, one of several Christians employed in the office, was not terminated because of her faith. Rather, she was fired because of her insubordinate rant and belligerence towards the Vice Presidents for whom she worked.

Likewise, complainant's psychological disability (or perceived disability) was not the reason she was terminated. If her supervisors truly possessed discriminatory animus based upon her disability, they could have, and would have, exhibited such animus in the past when she had disjointed episodes and took extensive leaves for this condition. Mr. Kirchen, one of the subjects of complainant's December 11th vitriol, also was one of the Vice Presidents who helped complainant obtain evaluation through Employee health Services and subsequent treatment in 2008 when she had a similar, albeit non-aggressive, episode in the office. Moreover, if truly motivated by animus, Mr. Kirchen, Dr. Glassman and the other decision-makers at the Hospital could have immediately terminated complainant based upon her insubordinate outburst. *See Sista v. CDC IXIS North Amer., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (holding disabled and non-disabled employees to the same standards for misconduct regardless of whether the insubordination was caused by disability). Despite the outburst, however, complainant was not fired but referred for counseling and treatment.

In *Rivera v. Smith*, 2009 U.S. Dist. LEXIS 3523 (S.D.N.Y. Jan. 20, 2009), the court found the termination of an psychiatrically disabled employee by a hospital to be lawful under the ADA where it was based upon (1) his insubordination and threatening conduct towards coworkers; and, (2) his refusal to submit to subsequent psychological examination. *See also, Pruitt v. Metcalf & Eddy, Inc.*, 2006 U.S. Dist LEXIS 293 (S.D.N.Y. Jan. 6, 2006) (dismissing discrimination claims based on race, religion and perceived psychiatric disability where plaintiff was fired for insubordinate conduct and failing to attend psychological counseling as directed by the employer).

Here, complainant was similarly directed to attend counseling following a threatening and insubordinate outburst. Like the plaintiffs in *Rivera* and *Pruitt*, complainant failed to comply with the employer's directives regarding treatment and obtaining medical clearance and it was this failure, coupled with the underlying misconduct, that formed the legitimate basis for the termination of her employment. Moreover, like the plaintiffs in the cases cited, complainant has no evidence to assert that the rationale provided by respondent is pretexual and the real reason is discrimination or retaliation. *See also Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (in the absence of evidence of racial or religious discrimination, permitted inference that termination was due to inappropriate work conduct); *Dzaba v. Haythe & Curley*, 1996 U.S. Dist. LEXIS 731, No. 94-1767, 1996 WL 31156, at *9 (S.D.N.Y. Jan. 26, 1996) (the absence of evidence of racial discrimination infers that employee was terminated for poor performance); *Stein v. McGraw-Hill, Inc.*, 782 F. Supp. 207, 212-13 (S.D.N.Y. 1992).

Accordingly, in the absence of any evidence of discriminatory animus, and where there is a failure to plead evidence of discrimination, a claim must be dismissed. *See Lanaux v. Central N.Y. Psych. Ctr.*, 1998 U.S. App. LEXIS 12614 (2d Cir., May 4, 1998) (unpubl.) (motion to

Patricia Araujo                                                                April 6, 2010
EEOC – New York District Office                                                     Page 7

dismiss affirmed where complainant identified membership in a protected category but merely
provided conclusory allegations as to discrimination).

## V.     **CONCLUSION**

Based on the foregoing, the Hospital did not violate Title VII, the Age Discrimination in
Employment Act, the Americans with Disabilities Act, or NYS Discrimination Laws.
Complainant's allegations regarding past promotions, salary increases and the termination of her
employment are unsupported by facts and based solely on her self-serving conjecture. If the
employer possessed discriminatory or retaliatory animus, it had ample opportunity to act upon it
prior to her termination for insubordination and failure to attend counseling as directed in 2010.
Respondent's decision to discharge was legitimate and should not be disturbed. Accordingly, a
finding of no probable cause should be issued and the charge dismissed.

Thank you for your attention to this matter. If you have any questions, please call me at
(212) 404-4073

Very truly yours,

Daniel T. Driesen
Associate General Counsel
NYU Medical Center

Encls.

H:\Harris, Diane\L-EEOC.04.10.doc