USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DIANE HARRIS,                                             :
                                                         :
                                                         :
                              Plaintiff,                 :
                                                         :
             -v-                                         :
                                                         :
NYU LANGONE MEDICAL CENTER *et al.*,                     :
                                                         :
                              Defendants.                :
-------------------------------------------------------------X

REPORT AND
RECOMMENDATION

12 Civ. 0454 (RA) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Ronnie Abrams, United States District Judge:**

Plaintiff Diane Harris, proceeding *pro se*, brings this employment discrimination action

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with

Disabilities Act of 1990 ("ADA"), and the New York State and City human rights laws.  In her

Second Amended Complaint ("SAC"), which runs more than 70 pages with exhibits, Harris

alleges that she experienced the following discriminatory conduct based on her race and

disability: termination of her employment, failure to promote, "unequal terms and conditions of

employment," retaliation, and hostile work environment.[1]

---

[1]      Harris's SAC does not include the standard *pro se* "Complaint for Employment Discrimination" form that
is attached to her First Amended Complaint.  However, the SAC does include a list of parties and asserts various
statements of her claims.  SAC, at 5, 28-36.  For example, on page 5, Harris makes broad allegations of
discrimination, and alleges Intentional Infliction of Emotional Distress, "Professional Misconduct" and violations of
the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Then, on page 28, she alleges
violations of the four discrimination statutes cited in the text of this Report and Recommendation.  Finally, on pages
29-36, Harris lists all 42 defendants and asserts 12 identical claims against each one.  These claims include her
discrimination claims, as well as claims for "professional misconduct," "fail[ure] to address/correct misconduct,"
"failure to protect employee," "violation of privacy," "libel/slander," "loss of employment wages," "pain and
suffer[ing]," "purposed emotional harassment," and "theft of personal items/mail."  To the extent that these are
cognizable claims, the Court will address them *infra*.

1


USDC SDNY
DATE SCANNED 7/9/13

Harris sues 42 defendants, who will be divided into four separate categories for purposes of this Report and Recommendation:

(1) **NYU Langone Medical Center** ("NYULMC")[2]

(2) **Non-NYULMC Institutional Defendants, CCA, and PPC**
New York University, NYU School of Medicine, NYULMC Board of Trustees, NYULMC Life Trustees, NYU Board of Trustees, NYULM Officers of the Board, NYU Officers of the Board, NYULMC Ex-Officio Trustees, NYULMC Associate Trustees, NYU Life Trustees, NYU Trustee Associates, Corporate Counseling Associates ("CCA"),[3] and Psychopharmacology Consultants ("PPC")

(3) **Individual Defendants, Group One**
Carl Willemin, Irene Kreuscher, Kimberly Glassman, Kevin Kirchen, Alison Brehm, Sharon Martinez, Mona L. Sonnenshein, Irma Rosario, Maritza Ramos-Hernandez, Reginald Odom, Carol Musto-Schiano, Kevin Hannifan, Alyson Franklin[4]

(4) **Individual Defendants, Group Two**
Robert Grossman, Robert Berne, Andrew Brotman, John Sexton, Andrew Litt, Susan Bowar-Ferres, Amy Horrocks, Daniel T. Driesen, Keith Baker, Robert Glickman, Theresa A. Bischoff, John Harney, Eric Rackow, Dr. Jan Roda, Melissa Schwartz

All Defendants have moved to dismiss the SAC under Rules 8 and 12(b)(6) of the

Federal Rules of Civil Procedure. They argue that, for various reasons, the named Defendants are

improper parties and that Harris's SAC does not state a claim. They have also moved for

---

[2]     According to Defendants, NYU Hospitals Center ("NYUHC") was Harris's employer and is the proper legal entity amenable to suit. NYUHC has not been named as a defendant in any of Harris's complaints, and, in her opposition brief, she explicitly reaffirms her belief that NYULMC was her employer. Harris's Opposition to Defendants' Motions to Dismiss, Dkt. No. 105, at 13 ("Defendants' claim that NYU Langone Medical Center was not Harris'[s] employer is false."). The Court notes that Harris's own papers (Exhibit D5 to her opposition) state that "NYU Langone Medical Center is the marketed, but not legal, name of the integrated academic medical center that consists of: NYU School of Medicine (a division of New York University) [and] NYU Hospitals Center. Since it is a corporation separate and apart from the School of Medicine, NYU Hospitals Center is the name that must appear on the hospitals' legal and regulatory documents . . . ." *Id.*, Dkt. No. 105-2, at 9. Still, for purposes of this motion to dismiss, the Court construes Harris's allegations liberally and thus will refer to her employer as NYULMC. The Court expects that this issue will be resolved definitively following discovery or future motion practice.

[3]     Throughout her pleadings, Harris refers to CCA as both Corporate Counseling Associates and Corporate Counseling Services. For purposes of this Report and Recommendation, the Court will refer to this defendant as Corporate Counseling Associates, as listed in the caption.

[4]     Harris also refers to Alyson Franklin as Alison Franklin.

sanctions against Harris under Rule 11 of the Federal Rules of Civil Procedure. Harris has cross-

moved to file a Third Amended Complaint and has also moved for sanctions against Defendants.

For the reasons set forth below, I recommend that Defendants' motions to dismiss be

granted in part and denied in part. I also recommend that Harris's cross-motion to file her

proposed Third Amended Complaint be denied, but recommend instead that Harris be granted

leave to file a new Third Amended Complaint, subject to certain conditions discussed below.

Finally, I recommend that both motions for sanctions be denied.

## TABLE OF CONTENTS

I. BACKGROUND ....................................................................................................... 5
  A. Facts .................................................................................................................. 5
    1. Harris's General Allegations of Discrimination ........................................... 5
    2. Harris's Failure to Promote Claims ............................................................. 7
    3. Harris's Termination Claims......................................................................... 9
    4. Harris's Perceived Disability ..................................................................... 12
  B. Procedural History ........................................................................................... 13
II. DISCUSSION ........................................................................................................ 14
  A. Legal Standards................................................................................................ 14
    1. Standard Under Rule 8................................................................................. 14
    2. Standard Under Rule 12(b)(6) ..................................................................... 16
    3. Standard Under Rule 15(a) .......................................................................... 17
  B. Analysis............................................................................................................ 18
    1. Title VII, ADA, NYSHRL, and NYCHRL Claims Against All Non-NYULMC
      Institutional Defendants, CCA, and PPC ................................................... 18
      a. The Title VII and ADA Claims are Barred For Lack of Subject Matter Jurisdiction for
        Failure to Exhaust Administrative Remedies With Respect to the Non-NYULMC
        Institutional Defendants, CCA, and PPC.................................................. 18
      b. Alternatively, the Title VII, ADA, NYSHRL, and NYCHRL Claims are Barred
        Against the Non-NYULMC Institutional Defendants, CCA, and PPC Because They
        Are Not Harris's Employers. ................................................................... 23
          i. Specific Allegations Against CCA ................................................... 26
      c. Alternatively, Harris Fails to State a Claim Against the Non-NYULMC Institutional
        Defendants, CCA, and PPC Under Title VII, the ADA, NYSHRL, and NYCHRL. . 28
    2. Title VII, ADA, and NYSHRL Claims Against NYULMC......................................... 28

a.  The Title VII Claim of Termination Based on Race Against NYULMC Should Be
    Dismissed. ........................................................................................... 28

b.  The Title VII Claim for Disparate Treatment Against NYULMC Should Survive and
    Be Repled. ........................................................................................... 32

c.  The ADA Claim for Termination Based on Disability Against NYULMC Should
    Survive and Be Repled. ...................................................................... 35

d.  The Title VII Retaliation Claim Against NYULMC Should Be Dismissed. .............. 37

e.  The Title VII Hostile Work Environment Claim Against NYULMC Should Be
    Dismissed. ........................................................................................... 41

f.  The NYSHRL Claims for Disparate Treatment and for Termination Based on
    Disability Should Survive and Be Repled, and All Other NYSHRL Claims Should Be
    Dismissed. ........................................................................................... 43

g.  The Title VII and ADA Failure to Promote Claims Against NYULMC Should Be
    Dismissed. ........................................................................................... 43

    i. The pre-April 7, 2009 Failure to Promote Claims Under Title VII Against
       NYULMC are Barred by the Statute of Limitations. ....................................... 43

    ii. The post-April 7, 2009 Failure to Promote Claims Under Title VII Against
        NYULMC Should Be Dismissed for Failure to State a Claim......................... 46

h.  The NYSHRL Failure to Promote Claims Against NYULMC Should Be Dismissed
    In Part. ................................................................................................ 48

3.  The NYCHRL Claims Against NYULMC ................................................................... 51

a.  The NYCHRL Claim for Termination Based on Race Against NYULMC Should Be
    Dismissed. ........................................................................................... 52

b.  The NYCHRL Claim for Disparate Treatment Based on Race Against NYULMC
    Should Survive and Be Repled. .......................................................... 52

c.  The NYCHRL Claim for Termination Based On Disability Against NYULMC
    Should Survive and Be Repled. .......................................................... 53

d.  The NYCHRL Retaliation Claim Against NYULMC Should Be Dismissed. ........... 54

e.  The NYCHRL Hostile Work Environment Claim Against NYULMC Should Be
    Dismissed. ........................................................................................... 55

f.  The NYCHRL Failure to Promote Claims Against NYULMC Should Be Dismissed
    in Part. ................................................................................................ 56

4.  The Title VII and ADA Claims Against All Individual Defendants Should Be
    Dismissed. ........................................................................................... 58

5.  The NYSHRL and NYCHRL Claims Against All Individual Defendants Should Be
    Dismissed in Part. ................................................................................ 59

6.  All Other Claims Should Be Dismissed. ................................................................... 62

a.  The Intentional Infliction of Emotional Distress Claim Should Be Dismissed. .......... 62

b.  The HIPAA Claim Should Be Dismissed. ............................................................. 63

c.   The Libel/Slander Claim Should Be Dismissed. ...................................................... 63

d.   The Claim Brought Under § 1983 Should Be Dismissed. ......................................... 64

e.   All Other Miscellaneous Claims Should Be Dismissed. .......................................... 65

7.   Given the Liberal Pleading Standards of Rule 15(a), Harris Should Be Permitted to File a Third Amended Complaint, Subject to Certain Guidelines. ................................... 65

8.   Motions For Sanctions ................................................................................................. 69

III.   RECOMMENDATIONS ................................................................................................. 71

## I.   BACKGROUND

### A.   Facts

#### 1.   Harris's General Allegations of Discrimination

The following facts are taken from Harris's SAC and the attachments thereto,[5] as well as

from her opposition to Defendants' motions to dismiss ("Harris Opp."), and are assumed to be

true for purposes of the motions to dismiss.[6]

In early 2000, Diane Harris, an African American female, interviewed for a position at

New York University Medical Center ("NYUMC") with NYUMC's Senior Staffing Specialist,

---

[5]      When deciding a motion to dismiss under Rule 12(b)(6), "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, the court may also consider "documents attached to the pleadings as an exhibit or any statements or documents incorporated in the Complaint by reference, and . . . any documents that are integral to the Complaint or an appropriate subject for judicial notice." *D'Antonio v. Metro. Transp. Auth.*, No. 06 Civ. 4283 (KMW), 2008 WL 582354, at *3 n.6 (S.D.N.Y. Mar. 4, 2008) (citing *Global Networks Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–56 (2d Cir. 2006)).  *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

[6]      District courts are not required to consider claims that are raised for the first time in a *pro se* plaintiff's opposition to a motion to dismiss.  *See, e.g., Cohen v. New York*, 481 Fed. Appx. 696, 697 (2d Cir. 2012).  However, because Harris is proceeding *pro se*, the Court may consider factual allegations contained in her submissions in opposition to Defendants' motions to dismiss, to the extent they are consistent with the SAC.  *See, e.g., Walker v. Schult*, 2013 WL 2249159, at *9 (2d Cir. May 23, 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Rosario v. New York City*, No. 12 Civ. 4795 (PAE), 2013 WL 2099254, at *1-2 n.1 (S.D.N.Y. May 15, 2013) ("[B]ecause [plaintiff] is proceeding *pro se*, the Court also considers factual allegations contained in [his] two submissions in opposition to defendants' motion to dismiss, to the extent consistent with the Complaint."); *Bonaby v. N.Y. City Taxi & Limousine Comm'n*, No. 02 Civ. 5423 (LAP), 2003 WL 21649453, at *1 n. 1 (S.D.N.Y. July 10, 2003) ("Some of the facts included in the background section come from documents attached to plaintiff's motion in opposition that, while not specifically referenced in the complaint, are 'integral' to the complaint and may be properly considered in the determination of this motion to dismiss.").

Maritza Ramos.  SAC (Dkt. No. 20), at 5.[7]  Following this interview, Harris had a second set of

interviews with Carl Willemin, Vice President and Administrator of the Rusk Institute, Irene

Kreuscher, Vice President of Hospital Operations, and Sharon Martinez, Office Manager.  *Id.* at

6.  Harris was subsequently hired as an Administrative Assistant, and began working at NYUMC

in Hospital Administration on June 26, 2000.  *Id.* at 7.  Harris served as assistant to Willemin and

Kreuscher from 2000-2006.  *Id.* at 15.  From 2006-2007, Harris supported Willemin and Stewart

Ault, Vice President; from 2006-2008, she supported Willemin and Kevin Kirchen, Vice

President, Strategic Program Development; and from 2008-2010, she supported Kirchen and

Kim Glassman, Senior Vice President and Chief Nursing Officer.  *Id.* at 17-18.  From time to

time, Harris also assisted other executives in Hospital Administration.  *Id.* at 16-17.  Harris

received annual performance ratings from Kreuscher, Willemin, and Martinez from 2000-2004.

*Id.* at 17.  Harris alleges that she "always received[,] met[,] or exceeded performance ratings

during all years of employment" and that she received an "exceeds performance rating" (a 4 out

of 5 ranking) in her final performance review.  *Id.* at 18; SAC Ex. 22, at 75; Harris Opp. at 10.

Harris states that "[f]rom the beginning of her employment with NYULMC she was

discriminated against."  SAC, at 20.  She alleges that she "made many attempts to address and

work with office managers and executives" including "Reginald Odom, Carol Musto-Schiano,

and Nancy Sanchez," ostensibly to "address and correct biased and disparate treatment

demonstrated toward her."  *Id*.  She asserts that she "and other African American employees

were discriminated against" in regards to hiring practices, promotional opportunities, a

---

[7]        Both the SAC and Harris's opposition papers include multiple exhibits, and some of the exhibits are in turn
comprised of multiple distinct documents with different paginations.  As a result, for clarity and consistency,
citations to documents submitted by Harris will correspond to the ECF page number, as opposed to the actual page
number of the cited document.  With regard to exhibits attached to Harris's opposition, the citation will also include
the docket number as there are four distinct documents comprising the entire submission.

discriminatory seniority system, and compensation and benefits.  *Id.* at 22.  Harris also states that she "believed Mona Sonnenshein was utilizing her authoritative position to perpetuate covert discriminatory acts towards [Harris].  [She] believed this to be the case because it was only one of the many covert actions [she] had experienced and would come to experience over the years."[8] *Id.* at 16.

In her opposition papers, Harris states that NYU counted her time off as "excessive absenteeism" when exceptions were made for employees outside of her protected class.[9]  Harris Opp., at 14.  She also contends that NYU compensated and promoted her less favorably that those outside her protected class.  *Id.*

Harris further alleges that "Defendants[ ] continually conspired against and exposed [her] to a hostile and antagonistic work environment."  SAC, at 23.  Specifically, she offers as examples that Defendants blocked access to her work computer prior to her termination, shorted her paycheck on January 8, 2010, reversed and removed funds from her checking account, did not allow her to gather her personal property when she was terminated, and failed to return all her personal property thereafter.  *Id.* at 23.  Harris alleges that the "cumulative" effect of Defendants' actions was to cause her "pain (physical and mental), health problems, emotional stress, and distress."  *Id.*

### 2.  Harris's Failure to Promote Claims

In her SAC, Harris alleges that she was not promoted in 2004, 2005, or 2008, "despite her seniority status," and that she had attempted to be promoted or transferred by applying to at least

---

[8]        It is not entirely clear what "covert action" Harris is referring to here, but it appears to be Sonnenshein's instruction that "Plaintiff solely assume scheduling of the yearly Service Line meetings."  *Id.* at 16.

[9]        In her opposition, Harris refers broadly to the behavior of NYU, while in her SAC she limits her discussion to the conduct of NYULMC, NYUMC, and individuals affiliated with each entity.

16 positions between 2001 and 2008.  *Id.* at 19-20.  For example, in 2004, she alleges that Mona

Sonnenshein and Maritza Ramos worked together to "identify qualified candidates to fill [an]

Executive Assistant/Office Manager Position."  *Id.* at 19.  Michelle Lopez, identified as

"Hispanic surnamed," was hired for the position.  *Id.*  In January 2005, Irma Rosario, identified

as "Hispanic," was hired as Executive Assistant/Office Manager even though, Harris alleges, she

was "more qualified [than Rosario] for the position" and "Rosario did not meet NYULMC's

minimum qualifications."  *Id.*

      In 2008, Harris had an interview for an Executive Assistant position.  *Id.* at 20; SAC

Ex. 7, at 47-49.  Harris attaches emails to the SAC which state that she was not hired because the

position was more "secretarial" and thus was believed to be not what Harris was "really looking

for."  SAC Ex. 7, at 48.  Harris alleges that "an Hispanic surnamed candidate was selected" for

this position.  SAC, at 20.  Also in 2008, Harris had another interview for an Executive

Assistant/Office Manager position.  *Id.*  She avers that NYULMC'S Director of Recruitment

(Carol Musto-Schiano) told her she was not selected due to lack of initiative, low test scores, and

negative comments on her last performance review.  *Id.*; SAC Exs. 8-9, at 50-51.  Deidre

Peterkin, an African American female, was hired instead.  SAC, at 20.  Harris attaches to her

SAC the results of five typing test scores from April 10, 2008 in which she received 5/8 (62%),

27/30 (90%), 25/30 (83%), 23/30 (76%), and a words per minute rate of 53.  SAC Exs. 10-14, at

52-56.  She also attaches her performance assessment from October 23, 2009 for the period of

September 1, 2008 to August 31, 2009, in which she received an overall rating of 4 out of 5.

SAC Ex. 22, at 75.

      According to Harris, at some point during her employment at NYULMC, Sharon

Martinez, identified as "Hispanic surnamed," was promoted to office manager based on her

seniority status, and Maria Souffront, identified as "Hispanic," was promoted to Executive Assistant within a year. *Id.* at 19. No dates are given for these promotions.

In her opposition papers, Harris describes two other "promotional opportunities" that were available at the time of her termination. Harris Opp., at 8-11. She alleges that she was "disciplined" to ensure that she "did not remain a viable candidate for promotional opportunities she was qualified for." *Id.* at 8. With regard to the first opportunity, on April 13, 2009, Kim Glassman told Harris that Glassman was likely to be promoted to Senior Vice President, and that she wanted Harris as her executive assistant. *Id.* at 10. In October, Glassman had interviews with executives and trustees, but she did not tell Harris about these meetings. *Id.* Glassman was not promoted until February 8, 2010 – nearly three weeks after Harris had been terminated. *Id.* at 10-11. Glassman hired Kathy Coichetti, who is "outside of Harris'[s] protected class," as office manager/executive assistant. *Id*. at 10.

The second job opportunity described by Harris was an executive assistant position to Dr. Sylvia Formenti. *Id.* Harris alleges that she responded to the internal employment posting for this position on December 8, 2009, but was unable to pursue the opportunity further because she was discharged on January 20, 2010. *Id.* at 10-11.

### 3. Harris's Termination Claims

On December 11, 2009, Harris was eating lunch when Kevin Kirchen approached and told her she could not have a radio. SAC, at 23. When Harris asked why she was not permitted to have a radio, Kirchen became angry and began shouting at her. *Id*. at 24. He then left the office. *Id.* Harris was in the process of composing an email to Kirchen and her other supervisor, Kim Glassman, when Glassman approached her desk and told her to go home and return to work

on December 14.  *Id.* at 24, 26.  Harris alleges that "[o]ther staff members outside her protected class had radios."  Harris Opp., at 11.

When Harris returned to work on December 14, she was "prevented by supervisors from entering into her office" and was sent to speak with Allison Brehm in Employee Health Services. SAC, at 26.  Brehm informed Harris that Glassman had instructed her to send Harris to Corporate Counseling Associates ("CCA").[10]  *Id.*

Harris went directly from NYULMC to CCA's offices, where she was assigned to a CCA counselor, Alyson Franklin.  *Id.*  Franklin told Harris that NYULMC had instructed CCA to mandate that Harris see a psychiatrist and that she could only return to work if a psychiatrist deemed her "fit for duty."  *Id.* at 27.  Franklin also told Harris she had to sign documents authorizing CCA to speak with Brehm, Kirchen, and Glassman, and that if she failed to sign the documents, CCA "would be forced to terminate their assistance with helping her return to work." *Id.*  Harris alleges that not signing the documents would have led to her termination and so, "under duress," she complied.  *Id.*  However, she only signed documents permitting CCA to communicate with Brehm, and refused to sign documents that would have authorized Glassman and Kirchen to speak with CCA.  *Id.*

Also on December 14, Harris made an appointment to meet with a psychiatrist, Dr. Jan Roda.  *Id.*  Harris had met with Dr. Roda on several occasions between 2006 and 2010, after she was referred to Dr. Roda by St. Luke's Roosevelt Hospital.  *Id.* at 27-28.  She had told St. Luke's Roosevelt that she would only consult with a therapist who was not affiliated with NYULMC. *Id.* at 28.  Harris asked Dr. Roda if he was affiliated with NYULMC and he denied any

---

[10]     CCA is a Human Capital Risk Management company that is the "administrator[ ] of NYU's employee assistance plan."  Harris Opp., at 7.  *See also* "About Us," CCA Company Website, available at http://www.ccainc.com/about-us.

affiliation.  *Id.*  Harris met with Dr. Roda on December 17 and December 29, 2009, and asked him to provide the medical clearance required for her to return to work.  Harris Opp., at 11.[11]

NYULMC's benefits department mailed Harris a letter dated January 12, 2010 attaching an application for a claim of disability leave under the Family and Medical Leave Act ("FMLA").  Harris Opp., at 11; Harris Opp., Dkt. No. 105-1, at 20-26.  Harris states that this application, in which "the employer's statement [was] already completed," gave her "authorization to make a fraudulent claim of disability once approved by a physician."  Harris Opp., at 11-12.  Ostensibly because Harris does not believe she is disabled under the FMLA, she did not file the application.  *Id.* at 8, 12.

On January 14, 2010, Harris received an undated letter from Reginald Odom, Vice President, Employee and Labor Relations at NYULMC.  SAC, at 22.  The letter stated that it had "come to [NYULMC's] attention that [Harris] [was] no longer adhering to the treatment plan developed for [her] as part of the administrative referral to Corporate Counseling" and specifically, on Friday, January 8, NYULMC had been informed by CCA that she "canceled [her] appointment, and therefore [was] no longer following [her] treatment plan."  SAC Ex. 18, at 61.  Further, the letter stated that "failure to re engage with Corporate Counseling as previously directed no later than Friday January 15th, 2010 [would] result in the termination of [her] employment."  *Id.*  Glassman, Kirchen, and Brehm were copied on the letter.  *Id.*  Harris responded on January 15, 2010, stating that she had been "totally compliant with [CCA] since December 14, 2009 and only ceased to do so on Tuesday, January 5, 2010 . . . after learning [she] was locked out of [her] work computer and banned from getting personal items from [her]

---

[11]     The Court presumes that Dr. Roda denied medical clearance at that time, though Harris makes no allegation to this effect.

work area and that [her] paycheck was approximately $1,000 short, and the physician would not

see [her] unless [she] paid $70 (billing was refused)." SAC Ex. 19, at 62. On January 20, 2010,

Harris received a letter from Reginald Odom at NYULMC terminating her employment "as a

result of [her] inappropriate, angry and antagonistic behavior previously demonstrated toward

[her] supervisors." Harris Opp., at 12; SAC Ex. 20, at 63.

### 4.  Harris's Perceived Disability

In the SAC, Harris alleges broadly that her disability is "psychological-emotional." SAC,

at 5. Harris also alleges in her opposition that she is regarded as having a psychological

disability. Harris Opp., at 8.  In support of this claim, she cites an exhibit that appears to consist

of notes from Alyson Franklin at CCA.[12]  Harris Opp., Dkt. No. 105, Ex. A2, at 20-25.  The

notes state that Alison Brehm requested that Harris have a psychiatric evaluation and that Harris

could not return to work until she was cleared by a psychiatrist. *Id.* at 20. The notes further

state: "Dr. R called worker back after appt. Reports client is disorganized, confused and poss

[sic] psychotic. At minimum client exhibits poor judgment;" "Dr R believes client has impaired

judgment, is disorganized and paranoid. Prev Dx [sic] was schizophrenia;" and "At this pt Dr R

would not recommend client rx to wrk." *Id.* at 22, 24. Harris also alleges that her supervisor

Kim Glassman "falsely label[ed] Harris as having "problems." Harris Opp., at 9.[13]

Harris also attaches to her opposition papers a letter from NYULMC that includes an

application to apply for disability leave under the FMLA (as discussed above). Harris Opp., Dkt.

---

[12]        The notes seem to be initialed "AF," which the Court interprets as Alyson Franklin, of CCA.

[13]        The NYU and CCA Defendants assert that there is no proof that anyone at NYULMC ever saw the notes
about "Dr. R" or used them as a basis for her termination. With respect to Harris's allegation about Glassman, they
argue that Harris's support for this claim only shows that "Ms. Glassman was annoyed that Ms. Harris was emailing
her to schedule meetings while she was on vacation in Paris." See Reply Memorandum of Law in Further Support
of the NYU and CCA Defendants' Motion to Dismiss the Second Amended Complaint, Dkt. No. 132, at 5.

No. 105-1, at 20-26.  The letter states: "This is to confirm notification by your department to Human Resources of your absence from work due to your disability."  *Id.* at 20.

**B.  Procedural History**

On February 1, 2010, Harris filed a complaint with the EEOC against NYULMC alleging discrimination based on her race, religion, age, and disability, as well as retaliation.  Harris Opp., Dkt. No. 105-1, at 49.  In her EEOC charge, Harris describes the events leading to her termination from NYULMC and alleges that NYULMC failed to promote her and retaliated against her.  *Id.* at 50-55.   On October 18, 2011, the EEOC issued to Harris a Dismissal and Notice of Rights form, in which it determined that it was "unable to conclude that [the] information obtained establishes violations of the statutes."  First Amended Complaint, Dkt. No 15, at 9.

On January 17, 2012, Harris filed her original complaint in this Court, totaling 47 pages with exhibits, alleging a single claim of race discrimination under Title VII solely against NYULMC.  (Dkt. No. 1).  She filed her First Amended Complaint, totaling 81 pages with exhibits, on August 7, 2012, in which she added 37 defendants and a disability claim under the ADA, as well as claims under the New York State and New York City Human Rights Laws ("NYSHRL" and "NYCHRL").  (Dkt. No. 15).  On October 2, 2012, she filed a Second Amended Complaint that added four more defendants and totaled 77 pages, including exhibits. (Dkt. No. 20).  On October 10, 2012, she sought to file a Third Amended Complaint ("TAC") totaling 92 pages, including exhibits; in the TAC she sought to add two more defendants and allege two additional grounds of discrimination: religion and gender. (Dkt. No. 23).

This case was referred to me by Judge Abrams on October 23, 2012 for general pretrial supervision and a report and recommendation regarding any dispositive motions. (Dkt. No. 32).

13

On November 8, 2012, I held a pre-trial conference at which I directed defense counsel to send a letter to Harris outlining which defendants they alleged to be improperly named, along with relevant authority.  I further directed that Harris should advise defense counsel whether she would withdraw her TAC and submit a revised TAC in compliance with Rule 8 of the Federal Rules of Civil Procedure.  (Dkt. Nos. 47 and 75).  In the event that Harris did not revise her TAC, I directed that Defendants could move to dismiss the SAC and file papers opposing Harris's motion to file her TAC.  *Id.*  Harris elected not to withdraw any claims or defendants. (Dkt. No. 75).  Accordingly, on January 11, 2013, all Defendants moved to dismiss Harris's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and opposed her request to file a TAC. (Dkt. Nos. 79-86, 90-94).  The NYU/CCA Defendants also moved for sanctions against Harris and sought attorneys' fees and costs.  (Dkt. No. 89).

On March 18, 2013, Harris filed her opposition to Defendants' motions to dismiss.  (Dkt. No. 105) ("Harris Opp.").  Her opposition is comprised of various documents and totals 300 pages with exhibits.  *Id.*  On March 20, 2013, Harris moved for sanctions against counsel for Defendants.  (Dkt. No. 123).  On April 8, 2013, all Defendants replied to Harris's opposition and opposed her request for sanctions.  (Dkt. Nos. 124-25, 127, 129-130, 132).

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Standard Under Rule 8

Under the Federal Rules of Civil Procedure, a claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "The purpose of this requirement is to provide fair notice of the claims and to enable the adverse

party to answer the complaint and prepare for trial." *Strunk v. United States House of Representatives*, 68 Fed. Appx. 233, 235 (2d Cir. 2003).

       While "the pleading standard Rule 8 announces does not require detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  A complaint will not suffice if it offers mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Strunk*, 68 Fed. Appx. at 235 (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  Accordingly, dismissal without leave to amend is proper under Rule 8 where "prior leave to amend was generously extended and the successive pleading remains prolix and unintelligible." *Id.* at 235.

       In order to comply with Rule 8, "[a] complaint should offer 'specification' as to the 'particular activities by any particular defendant . . . .'" *Am. Sales Co. v. Astrazeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (citing *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)).  "Rule 8(a) also requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Martin v. City of New York*, No. 07 Civ. 7384 (DC), 2008 WL 1826483, at *1 (S.D.N.Y. Apr. 23, 2008) (internal quotations omitted).

### 2. Standard Under Rule 12(b)(6)

In order to withstand a motion to dismiss, a complaint must state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. A claim is only facially plausible under Rule 12(b)(6) when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In assessing the sufficiency of the complaint under Rule 12(b)(6), "the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Wilson v. N.Y. City Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at *1 (S.D.N.Y. Mar. 8, 2013) (citing *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012)). While a plaintiff is not necessarily required to provide specific facts in order to survive a motion to dismiss, "the complaint must 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Leung v. New York Univ.*, No. 08 Civ. 5150 (GBD), 2010 WL 1372541, at *3 (S.D.N.Y. Mar. 29, 2010) (citing *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008).

Under 12(b)(6), the "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citations omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."

16

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal citations omitted).

The submissions of a *pro se* plaintiff are to be construed "liberally" and must be "interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). This standard applies even more strongly when a *pro se* plaintiff alleges a civil rights violation. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). Still, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Wilson*, 2013 WL 922824, at *1 (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). A *pro se* complaint, like any other, "must state a plausible claim for relief." *Walker*, 2013 WL 2249159, at *3 (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

### 3.  Standard Under Rule 15(a)

"Rule 15(a) provides that other than amendments as a matter of course, 'a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citing Fed. R. Civ. P. 15(a)). The Supreme Court has stated that:

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 15(a) provides that "after a party has amended a pleading once as of right, future amendments may only be permitted on consent or by leave of court." *380544 Can., Inc. v. Aspen Tech., Inc.*, No. 07 Civ. 1204 (JFK), 2011 WL 4089876, at *2 (S.D.N.Y. Sept. 14, 2011). Courts should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations omitted). However, an opportunity to amend should be denied where any such amendment would be futile: that is, "where 'the problem with [the plaintiff's] causes of action is substantive' such that '[b]etter pleading will not cure it.'" *Heicklen v. U.S. Dept. of Homeland Sec.*, No. 10 Civ. 2239 (RJH) (JLC), 2011 WL 3841543, at *17 (S.D.N.Y. Aug. 30, 2011) (citing *Cuoco*, 222 F.3d at 112); *see also Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009).

## B. **Analysis**

### 1. **Title VII, ADA, NYSHRL, and NYCHRL Claims Against All Non-NYULMC Institutional Defendants, CCA, and PPC**

#### a. **The Title VII and ADA Claims are Barred For Lack of Subject Matter Jurisdiction for Failure to Exhaust Administrative Remedies With Respect to the Non-NYULMC Institutional Defendants, CCA, and PPC.**

As an initial matter, the Court must consider whether it has jurisdiction over Harris's claims. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) [of the Federal Rules of Civil Procedure] when the Court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If subject matter jurisdiction is lacking and the parties fail to raise the issue, "the court has the duty to dismiss the action *sua sponte*." *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*,

211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.").[14]

Under Title VII and the ADA, prior to bringing claims in federal court, a plaintiff must first name the defendants in a complaint filed with the EEOC. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). Failure to do so may result in dismissal for lack of subject matter jurisdiction. *See Zimmelman v. Teachers' Ret. Sys.*, No. 08 Civ. 6958 (DAB) (DF), 2010 WL 1172769, at *5 (S.D.N.Y. Mar. 8, 2010) (Report and Recommendation) ("As a general rule, a court lacks jurisdiction to hear a civil action against a party that was not already named in an EEOC charge." (citing *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 389 (S.D.N.Y. 2002))), *adopted by* 2010 WL 2034436 (S.D.N.Y. May 20, 2010); *Zustovich v. Harvard Maint., Inc.*, No. 08 Civ. 6856 (HB), 2009 WL 735062, at *7 (S.D.N.Y. Mar. 20, 2009).

Harris only named NYULMC in her EEOC complaint. She did not name or allege discrimination claims against any of the non-NYULMC institutional defendants, CCA, or PPC in her EEOC charge, thus depriving the Court of jurisdiction under Rule 12(b)(1). Courts routinely dismiss claims against defendants where a plaintiff fails to exhaust her administrative remedies by naming them in an EEOC charge. *See, e.g., Carcasole-Lacal v. Am. Airlines, Inc.*, No. 04 Civ. 5082, 2005 WL 1587303, at *1 (2d Cir. July 7, 2005) (affirming district court's dismissal of complaint where defendants were not named in EEOC charge and there was no identity of interest); *Borden v. Wavecrest Mgt. Team Ltd.*, No. 11 Civ. 6737 (GBD) (FM), 2012 WL

---

[14]     Defendants do not expressly move to dismiss pursuant to Rule 12(b)(1). However, the NYU/CCA defendants do state that neither the individual defendants nor the NYU Institutional Defendants (except NYULMC) were named as respondents in the EEOC Charge, thereby precluding a Title VII claim in federal court. Memorandum of Law in Support of the NYU and CCA Defendants' Motion to Dismiss the Second Amended Complaint ("NYU and CCA Defendants' Motion to Dismiss"), Dkt. No. 91, at 21, 25. Dr. Roda also notes that he was not named in the EEOC Charge. Memorandum of Law in Support of Jan Roda, M.D.'s Motion to Dismiss, Dkt. No. 85, at 9-11.

4094959, at *2 (S.D.N.Y. Sept. 18, 2012) (dismissing all claims against party not named in

EEOC complaint); *Bethea v. Potter*, No. 08 Civ. 2789 (RWS), 2009 WL 1726285, at *3

(S.D.N.Y. June 18, 2009) (granting motion to dismiss where plaintiff filed EEOC charge against

employer without naming defendant).

Nonetheless, because EEOC charges "generally are filed by parties not versed in the

vagaries of Title VII and its jurisdictional and pleading requirements, [the Second Circuit] [has]

recognized an 'identity of interest' exception" to the rule requiring plaintiffs to properly exhaust

their claims.   *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (internal citations

omitted).  A plaintiff may proceed against a party not named in the EEOC charge "where there is

a clear identity of interest between the unnamed defendant and the party named in the

administrative charge."  *Johnson*, 931 F.2d at 209.

The Second Circuit has set forth four factors to determine whether an identity of interest

exists: (1) whether the role of the unnamed party could reasonably be ascertained at the time of

the filing of the EEOC complaint; (2) whether the interests of the named party are so similar to

those of the unnamed party's that "for the purpose of obtaining voluntary conciliation and

compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;" (3)

whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of

the unnamed party; (4) whether the unnamed party has in some way represented to the

complainant that its relationship with the complainant is to be through the named party.  *Vital*,

168 F.3d at 619; *Johnson*, 931 F.2d at 209-10.

In her opposition to the motions to dismiss, Harris argues that "[i]t should have been

understood that any parties associated with NYULMC causing harm to or were involved in the

interference of Harris' employment relationship could potentially be held liable."  Harris Opp., at

15.  However, this allegation is insufficient to create an identity of interest between NYULMC

and the rest of the institutional defendants.  *See e.g., Leung*, 2010 WL 1372541, at *9-10 (where

plaintiffs only named NYU Medical Center in EEOC complaint, failed to allege NYU "engaged

in, condoned, or in any way participated in the allegedly unlawful actions undertaken by the

Medical Center," and offered no facts showing that NYU, "as parent company to the Medical

Center," was unknown to plaintiffs at time they filed EEOC complaint, court found no identity of

interest between NYU Medical Center and NYU and dismissed NYU from suit); *Manos v.*

*Geissler*, 377 F. Supp. 2d 422, 426-27 (S.D.N.Y. 2005) (discussing factors and finding no

identity of interest where unnamed defendant was franchisor of defendant named in EEOC

charge).

        The Court concludes that no identity of interest exists on the facts before it.  First, the

Court sees no reason why Harris did not already know or could not have otherwise ascertained

the names of the non-NYULMC Defendants through reasonable effort at the time of filing her

EEOC complaint, and Harris provides no justification for her lack of knowledge or alleged

inability to discover the unnamed parties.  Indeed, she states only that "[i]t should have been

understood that any parties associated with NYULMC . . . could potentially be held liable."

Harris Opp., at 15.  Second, the interests of NYULMC are undoubtedly distinct from the other

NYU institutional Defendants, as well as from CCA and PPC.  Additionally, there are no

allegations that any Defendant represented to Harris that any relationship they might have with

her was to be through NYULMC.  Moreover, the third factor, which considers the actual

prejudice to the unnamed parties, certainly weighs in favor of CCA and PPC, as they would have

had no notice of any potential claims against them.[15]  *See Manos*, 377 F. Supp. 2d at 427

(explaining that "the crucial question" is whether an unnamed defendant had "actual notice that a

charge had been filed with the EEOC") (internal citations omitted).  Even if it is not entirely

clear that the non-NYULMC institutional Defendants would suffer prejudice (other than the

prejudice of having a lawsuit pending against them), courts routinely refuse to apply the identity

of interest exception when all other factors militate in favor of the unnamed party.  *See*

*Zimmelman*, 2010 WL 1172769, at *7-8 (rejecting identity of interest exception where plaintiff

alleged that unnamed and named parties were "inextricably joined" and could not be "separated

as to responsibility" because, even though third factor did not favor defendants, plaintiff was

aware of unnamed party's role, two parties were separate entities with different purposes and

management systems, and unnamed party never represented that relationship with plaintiff was

to be through named party); *Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578 (NRB), 2006

WL 1096830, at *3-4 (S.D.N.Y. Apr. 26, 2006) (finding exception did not apply where unnamed

party was not prejudiced but plaintiff's allegations made clear that he could have ascertained

unnamed party's role in alleged misconduct, two parties were completely distinct business

entities, and unnamed party did not represent that relationship would solely be through named

defendant); *Blake v. Potter*, No. 03 Civ. 7733 (MBM), 2004 WL  2290492, at *3 (S.D.N.Y. Oct.

8, 2004) (finding no identity of interest even though not clear that unnamed party suffered actual

---

[15]     While Harris might argue that CCA should have been on notice because it was mentioned in the body of
her EEOC charge, CCA was only referred to in explaining the context surrounding Harris's termination.  Harris
Opp., Dkt. 105-1, Ex. D1, at 49.  Harris made no allegations of discriminatory conduct that would serve to put CCA
on notice that it might be a defendant in an employment discrimination case.  As such, the identity of interest
exception does not apply.  *See Brodie v. New York City Transit Auth.*, No. 96 Civ. 6813 (LMM), 1998 WL 599710,
at *6 (S.D.N.Y. Sept. 9, 1998) (noting that "courts may consider whether, although not named as a respondent, the
defendant is mentioned within the body of the EEOC charge as having played a role in the discrimination," but
finding exception not to apply because factors weighed in favor of unnamed party that had no notice of EEOC
proceedings).

22

prejudice given strength of other three factors and that unnamed party had no notice of EEOC proceedings).

In sum, because Harris only named NYULMC as a defendant in her EEOC complaint and because there is no identity of interest between NYULMC and the non-NYULMC institutional Defendants, CCA, and PPC, Harris has failed to exhaust her administrative remedies and is jurisdictionally barred from asserting Title VII and ADA claims against the Non-NYULMC Institutional Defendants, CCA, and PPC.

> **b. Alternatively, the Title VII, ADA, NYSHRL, and NYCHRL Claims are Barred Against the Non-NYULMC Institutional Defendants, CCA, and PPC Because They Are Not Harris's Employers.**

The existence of an employer-employee relationship is a "primary element" of all Title VII and ADA claims. *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-2(a)) ("Title VII makes it 'an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"); *Heller v. CONRAIL*, 331 Fed. Appx. 766, 768 (2d Cir. 2009) (Title VII and the ADA "apply only to discriminatory practices by an employer."); *Sunnen v. New York*, No. 10 Civ. 372 (PKC), 2010 WL 3912728, at *1 (S.D.N.Y. Sept. 10, 2010) ("Title VII is directed solely to unlawful discrimination in the employer-employee context.").

An employer-employee relationship is also required to sustain analogous claims under the NYSHRL and the NYCHRL. *Kilkenny*, 2006 WL 1096830, at *4 (citing *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)); *Mahmud v. Kaufmann*,

496 F. Supp. 2d 266, 274-75 (S.D.N.Y. 2007) (dismissing NYSHRL claim where there was no employment relationship).

While the term "employer" is "viewed functionally" and "may encompass[] persons who are not technically employers," liability is limited to those who "control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *Shamilov v. Human Res. Admin.*, No. 10 Civ. 8745 (PKC), 2011 WL 6085550, at *5 (S.D.N.Y. Dec. 6, 2011) (citing *McCray v. City Univ. of N.Y.*, 2011 WL 1197467, at *4-5 (S.D.N.Y. Mar. 25, 2011) (dismissing complaint where plaintiff failed to adequately allege an employer-employee relationship); *see also Gulino*, 460 F.3d at 370-72 (explaining that common law principles of agency apply in assessing employment relationship under Title VII and ADA and considering factors of control, supervision, chain of command, influence, intent to employ, and profit sharing); *Lans v. Kiska Constr. Corp.*, No. 96 Civ. 4114 (KMW) (AJP), 1997 WL 313162, at *4 (S.D.N.Y. Apr. 18, 1997) (Report and Recommendation) (finding that all tests used to determine whether defendant is employer share one key factor: "the amount of control or supervision a defendant exerts" over employee) (citing *Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 922 F. Supp. 943, 949 (S.D.N.Y. 1996)).

Here, Harris has failed to sufficiently allege that any of the non-NYULMC institutional Defendants, CCA, or PPC were her employer or had any element of control over her compensation, her terms of employment, or her termination.  In her SAC, she alleges that in 2000, she was informed that "NYULMC had chosen her for the Administrative Assistant's position in Hospital Administration" and that on June 26, 2000, she "began working at NYU Medical Center in Hospital Administration."  SAC, at 7.  She refers solely to NYULMC as her employer and alleges that it alone was responsible for her termination.  SAC, at 20-21.  There are

no allegations that she was employed by any other Defendant.  Accordingly, as Harris has failed

to allege an employee-employer relationship between herself and the non-NYULMC institutional

Defendants, CCA, or PPC, her Title VII, ADA, NYSHRL, and NYCHRL claims against these

Defendants should be dismissed on this ground as well.  *Okoi v. El Al Isr. Airlines*, 378 Fed.

Appx. 9, 12 (2d Cir. 2010) (affirming district court's dismissal of plaintiff's complaint and denial

of motion to amend where there were no allegations of employment relationship); *Pandozy v.

Tobey*, 335 Fed. Appx. 89, 91 (2d Cir. 2009) (affirming district court's dismissal of complaint

where plaintiff "fail[ed] to state a cause of action under Title VII, since he [did] not allege an

employer-employee relationship between himself and any of the [d]efendants"); *Krasner v.

Episcopal Diocese of Long Island*, 374 F. Supp. 2d 306, 309-10 (E.D.N.Y. 2005) (granting

motion to dismiss where plaintiff failed to allege employer-employee relationship).[16]

---

[16]       In regard to the non-NYULMC NYU institutional Defendants, Harris states that "NYULMC is an
integrated enterprise directed by a centralized employee and labor relations department sharing common
management, officers, and trustees."  Harris Opp., at 13.  To the extent this is an attempt to hold the institutional
Defendants liable under either the single or joint employer doctrine, it falls short.  The single employer doctrine
allows a plaintiff to hold a party liable where there is "sufficient indicia of an interrelationship between the
immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved
employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."  *Chin-
Mckenzie v. Continuum Health*, 876 F. Supp. 2d 270, 294 (S.D.N.Y. 2012) (internal citations omitted).  However,
Harris does not allege facts sufficient to satisfy the elements of the single employer test: NYULMC and the other
Defendants "cannot be found to represent a single, integrated enterprise" due to the "absence of evidence of (1)
interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common
ownership or financial control."  *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (internal
citations omitted); *see also Leung*, 2010 WL 1372541, at *9-10 (dismissing claims against NYU where plaintiffs
were employees of the Medical Center and plaintiffs did not provide evidence sufficient to adduce that NYU and the
Medical Center represented a single enterprise).  Nor can the non-NYULMC Defendants be properly labeled joint
employers as Harris's pleadings are completely devoid of allegations that any other Defendant had "immediate
control" over Harris, or that the other Defendants shared "commonality of hiring, firing, discipline, pay, insurance,
records, and supervision" with regard to Harris.  *Kilkenny*, 2006 WL 1096830, at *4 (dismissing claims against
defendant where plaintiff's "conclusory" allegations that defendant was "involved in controlling [his] employment
situation, his work performance, and his time and expense[s]" were "insufficient to establish a joint employer
relationship").

### i.    Specific Allegations Against CCA

Harris explicitly admits that CCA was not her employer.  Harris Opp, at 7.  However, she argues that it was "the administrator[ ] of NYU's employee assistance plan" and seeks to hold CCA liable "under both Title VII and the ADA both as agents and third party interferers of Harris' employment opportunities."  *Id.*  Under federal discrimination law, an employer may be liable for the wrongful acts of its agents.  *Gulino*, 460 F.3d at 378-79 ("Title VII itself explicitly recognizes that 'any agent' of an employer will be liable for discriminatory behavior." (citing 42 U.S.C. § 2000e(b))); *Tishman v. AP*, No. 05 Civ. 4278 (GEL), 2005 WL 3466022, at *2 (S.D.N.Y. Dec. 16, 2005) ("[A] corporate employer is accountable for the acts of its agents within the scope of their employment." (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 758 (1998))).  "[A]n agent is one who agrees to act on behalf of another, subject to the other's control."  *Campbell v. International Bhd. of Teamsters*, 69 F. Supp. 2d 380, 386 (E.D.N.Y. 1999) (citing Restatement (Second) of Agency §§ 219-237 (1958)).

Harris alleges no facts whatsoever to support a claim that CCA was acting "within the scope" of some sort of employment relationship with NYULMC or that it was subject to NYULMC's control.   Moreover, even if CCA was an agent of NYULMC, it is NYULMC that would be liable for CCA's actions, and not the other way around.  Accordingly, CCA is not liable for any allegedly discriminatory conduct under an agency relationship and the claims against it should also be dismissed on this ground.  *See Campbell*, 69 F. Supp. 2d at 386 (dismissing complaint containing no allegations from which it could be inferred that defendants were agents of plaintiff's employer).

Harris's attempt to hold CCA liable as a "third party interferer[ ] of [her] employment opportunities" also fails.  Harris Opp., at 7.  To start, other than this conclusory allegation, Harris

does not explain how CCA interfered with her employment opportunities.[17]  Further, the Second

Circuit has adopted an extremely limited view regarding liability under an interference theory.

*Gulino*, 460 F.3d at 378.  In *Spirt v. Teachers Ins. & Annuity Ass'n*, the Second Circuit held that

"the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who

significantly affects access of any individual to employment opportunities, regardless of whether

that party may technically be described as an 'employer.'"  691 F.2d 1054, 1063 (2d Cir. 1982)

(internal citations omitted), *judgment vacated on other grounds*, 463 U.S. 1223 (1983).

However, the Second Circuit recently questioned *Spirt*'s application of the interference test and

characterized *Spirt*'s limited holding as "where an employer has delegated one of its core duties

to a third party . . . that third party can incur liability under Title VII."  *Gulino*, 460 F.3d at 377.

The *Gulino* court further noted that the interference test has been limited to apply only in cases

where a defendant has delegated its employment responsibilities to a third party.  *Id.*  (citing

*Kern v. City of Rochester*, 93 F.3d 38 (2d Cir. 1996)).  Additionally, it instructed that courts

should rely on common law principles to determine whether a plaintiff has established an

employer-employee relationship, such as "whether [the plaintiff] has received direct or indirect

remuneration from the alleged employer."  *Id.*  (citing *Pietras v. Board of Fire Comm'rs*, 180

F.3d 468, 473 (2d Cir. 1999)).

  Here, Harris has made no factual allegations that CCA interfered with her employment

opportunities, nor has she alleged that there was any delegation of responsibility by NYULMC to

CCA.  Just as in *Gulino*, "[t]he party here with the clear direct employment relationship,

[NYULMC], has not delegated a core employer responsibility to [CCA]."  *Id.* at 378.  And, even

---

[17]     Harris alleges that CCA counselor Alyson Franklin made Harris sign an authorization release permitting CCA and Alison Brehm (of NYULMC) to speak about Harris's work-related issues.  SAC, at 27; Harris Opp., at 11. This allegation does not constitute a cognizable claim under Title VII or the ADA.

if there were some delegation of responsibility, "it would be [NYULMC] – the putative third

party delegee – that would be liable under *Spirt*." *Id.*  Accordingly, the interference test is

inapplicable here and does not render CCA liable as a matter of law.

> **c.   Alternatively, Harris Fails to State a Claim Against the Non-NYULMC Institutional Defendants, CCA, and PPC Under Title VII, the ADA, NYSHRL, and NYCHRL.**

As a final basis for dismissal against this group of Defendants, the Court notes that, as

stated above, a claim is only facially plausible under Rule 12(b)(6) when the plaintiff "pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Here,

Harris has failed to provide factual allegations sufficient to establish plausible liability of the

non-NYULMC institutional Defendants, CCA, and PPC.  Indeed, the fact that none of these

Defendants was even mentioned in the body of the SAC (except briefly CCA) further militates in

favor of their dismissal.

> **2.   Title VII, ADA, and NYSHRL Claims Against NYULMC**

> **a.   The Title VII Claim of Termination Based on Race Against NYULMC Should Be Dismissed.**

Under Title VII, it is "unlawful for an employer to fail or refuse to hire or to discharge

any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims of employment

discrimination brought pursuant to Title VII are analyzed under the burden-shifting approach set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).[18]

To plead a plausible claim of Title VII discrimination, a plaintiff must allege that: (1) she is a member of a protected class; (2) she was performing her duties satisfactorily and was qualified for the employment position; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Smith v. City of New York*, No. 12 Civ. 3250 (JMF), 2013 WL 1903856, at *3 (S.D.N.Y. May 8, 2013) (citing *Ruiz v. City of Rockland*, 609 F.3d 486, 491 (2d. Cir. 2010)); *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.,* No. 09 Civ. 12 (RMB) (MHD), 2009 WL 3682458, at *7 (S.D.N.Y. Oct. 29, 2009); *Farrell v. Child Welfare Admin.*, 77 F. Supp. 2d 329, 332 (E.D.N.Y. 1999), *aff'd* , 22 Fed. Appx. 65 (2d Cir. 2001). Wrongful termination constitutes a materially adverse employment action. *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 Fed. Appx. 660, 662 (2d Cir. 2012) (citing *Galabya v. NYC Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

In *Swierkiewicz v. Sorema NA*., the Supreme Court held that, at the motion to dismiss stage, the plaintiff is not required to set forth allegations sufficient to make out a *prima facie* case of employment discrimination or to satisfy the burden-shifting framework of *McDonnell-Douglas*. 534 U.S. 506, 510 (2002).  However, while the Supreme Court expressly reaffirmed *Swierkiewicz* in *Twombly*, the Second Circuit has questioned its continuing vitality, noting that

---

[18]     Under the *McDonnell-Douglas* approach: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for [its actions]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reason, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993)

"[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." *Hedges v. Town of Madison*, 456 Fed. Appx. 22, 23 (2d Cir. 2012); *see also Jackson v. Cnty. of Rockland*, 450 Fed. Appx. 15, 19 (2d Cir. 2011) (rejecting plaintiff's reliance on *Swierkiewicz* for the erroneous proposition that direct evidence of discrimination is not required in complaint to survive motion to dismiss).  Because the plaintiff's claims in *Hedges* failed to meet "any conceivable standard of pleading," the Second Circuit held that it need not resolve whether an employment discrimination claimant must plead a *prima facie* case under *McDonnell-Douglas* or, alternatively, whether he need only "give fair notice to the defendants of the factual bases for his claims." *Hedges*, 456 Fed. Appx. at 23-24.

"[A]t a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required." *Smith*, 2013 WL 1903856, at *2 n.2 (citing *Hedges*, 456 Fed. Appx. at 23).  Accordingly, a Title VII plaintiff must still "set forth factual circumstances – such as preferential treatment given to [ ]similarly situated individuals, or remarks that convey discriminatory animus – from which the Court can infer discrimination on the basis of protected status." *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *2 (S.D.N.Y. Sept. 27, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)); *Perry v. State Dep't of Labor*, No. 08 Civ. 4610 (PKC), 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009), *aff'd*, 398 Fed. Appx. 628 (2d Cir. 2010).  Indeed, the plaintiff's claim "must offer more than conclusory statements" and "the complaint must contain factual allegations supporting the plausible inference that the employer discriminated against the plaintiff *because of* the plaintiff[']s protected characteristic." *Edwards v. New York State Unified Court Sys.*, No. 12 Civ. 46 (WHP), 2012 WL 6101984, at *4 (S.D.N.Y. Nov. 20, 2012) (emphasis added) (citing *Alvarez v. Rosa*, No. 11 Civ. 3818 (KBF),

2012 WL 651630 (S.D.N.Y. Feb. 28, 2012)).  In the absence of such allegations, dismissal at the

pleading stage is warranted.  *Perry*, 2009 WL 2575713, at *2.

Harris does not state a claim that her termination was racially motivated because she fails

to "demonstrate any facially plausible[ ] nexus between her protected characteristics" and

NYULMC's decision to terminate her employment.  *Williams*, 2012 WL 4471544, at *4.  While

she properly pleads that she is a member of a protected class (African American), that she was

qualified for her position (SAC, at 13-18), and that she suffered an adverse employment action in

being terminated, she fails to allege any connection between her termination and Defendants'

allegedly racially discriminatory conduct.  *See Edwards*, 2012 WL 6101984, at *5 (dismissing

plaintiff's race discrimination claim where amended complaint, "even when liberally construed,

fail[ed] to link the alleged discriminatory conduct to a protected characteristic and therefore [did]

not state a plausible discrimination claim").  In Harris's pleadings, she describes at length the

events leading up to her termination: a fight with Kevin Kirchen, NYULMC's requirement that

she attend CCA and receive counseling, and her missing an appointment with Dr. Roda which

constituted a failure to comply with her treatment plan.  SAC, at 22-23; SAC Ex. 19, at 62;

Harris Opp., at 11-12.  None of these allegations suggests that her termination was based on

racial animus.  While racial discrimination may, in theory, be "one possibility" for NYULMC's

actions, "[w]ithout actual facts demonstrating discriminatory animus," Harris's claim that she

"was terminated for discriminatory reasons may be conceivable, but it is certainly not plausible."

*Ortiz v. Std. & Poor's*, No. 10 Civ. 8490 (NRB), 2011 WL 4056901, at *4 (S.D.N.Y. Aug. 29,

2011).  Accordingly, her Title VII claim of wrongful termination against NYULMC should be dismissed.[19]

### b.  The Title VII Claim for Disparate Treatment Against NYULMC Should Survive and Be Repled.

Under the liberal standards afforded to *pro se* plaintiffs, the Court construes certain of Harris's allegations as an attempt to claim disparate treatment on the grounds that she was subjected to unequal pay and an unfair time-off policy because of her race.  *See Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) ("Subjecting an employee to unequal pay can, of course, constitute a materially adverse employment action."); *Ehrhard v. Lahood*, No 09 Civ. 1793 (JFB) (AKT), 2012 WL 1038803, at *16 (E.D.N.Y. Mar. 28, 2012) (holding that allegedly unfair vacation policy could be considered "materially adverse").  A plaintiff stating a claim for disparate treatment must allege facts "that the circumstances surrounding the action gave rise to an inference of discrimination, including that she was 'similarly situated in all material respects to the individuals with whom she seeks to compare herself.'"  *King v. U.S. Sec. Associates, Inc.,* 2012 WL 4122025, at *8 (S.D.N.Y. Aug. 22, 2012) (Report and Recommendation) (citing *Malcolm*, 483 Fed. Appx. at 662), *adopted by* 2012 WL 4327396 (S.D.N.Y. Sep 18, 2012); *Jenkins*, 2009 WL 3682458, at *7 ("A plaintiff alleging discrimination based on disparate disciplinary treatment must demonstrate, among other things,

---

[19]     It is not clear whether Harris seeks to allege that she was terminated because of her religion in her SAC.  In her opposition papers, she makes one statement about religion, alleging that she is a "practicing Christian" and that she "spoke a prayer at work in the presence of her supervisor, Kimberly Glassman, resulting in inhumane discipline and discharge."  Harris Opp., at 15.  However, she offers no facts to support that she was discharged because of this prayer, and makes no allegations that that NYULMC harbored any discriminatory animus regarding her religion.  Accordingly, to the extent she makes such a claim, it should also be dismissed as insufficiently pled.  Harris does seem to allege religious discrimination in her proposed TAC (Dkt. No. 23, at 10), but she offers no supporting factual details and thus her claim of religious discrimination does not pass muster here either.

that a similarly situated employee not in the relevant protected group received better treatment.").

Harris states that she was compensated "less favorably than those outside her protected classes." Harris Opp., at 14.  She also alleges that her "times off were counted against her as excessive absenteeism" and that she was required to submit medical documents to her supervisors when she was only absent one day, while "[n]o one else was required to."  *Id*. However, Harris provides very few facts to establish an inference of racial animus on the part of NYULMC in allegedly paying Harris less than her colleagues outside of her protected class or by implementing a discriminatory time-off policy.[20]  In attachments to her opposition, Harris does include an email dated November 4, 2008 from Kevin Kirchen to Reginald Odom and Kim Glassman in which Kirchen writes that Harris's claim that "Maria" made more than Harris "may have some validity" because Harris had "more seniority" and "Maria supports only Irene" while "[Harris] supports two VPs."  Harris Opp., Dkt. No. 105-2, at 81.  Notes on the document (ostensibly Harris's) indicate that "Maria" is Maria Charles, who, according to Harris, is a Hispanic female, and is thus outside Harris's protected class.  SAC, at 8.  That said, Harris also includes documents showing that in March of 2009, four months after Kirchen's email about Maria Charles, Harris received an increase in her salary from $52,420.50 to $60,000.  Harris Opp., Dkt. No. 105-2, at 77-78.  It is unclear what salaries were earned by other individuals in Harris's same position, although this is information that would not usually be available to a

---

[20]      Harris does attach documents that appear to be online comparisons between her salary and the salaries of other Executive Assistant positions in New York City and nationally.  Harris Opp., Dkt. No. 105-2 at 79-80. However, these documents have nothing to do with any Defendant named in this action and are irrelevant to the allegedly discriminatory conduct of Harris's employer.

plaintiff at the onset of an employment discrimination case.[21]  Harris also includes an email

stating that Mara Epstein, a white female, received a salary of $93,150 in 2007, but this evidence

cannot support her disparate treatment claim because, according to Harris, Epstein was an

analyst, not an administrative assistant, and thus was not similarly situated to Harris.  Harris

Opp., Dkt. No. 105-2 at 75; SAC, at 9.

To support her claim that exceptions to the time-off policy were made for employees

outside her protected class, Harris includes multiple email exhibits.  Harris Opp., at 14; Harris

Opp., Dkt. No. 105-2 at 61-73.  First, she cites to a chain of emails in which she wrote that it was

unfair that she was "docked a day" for taking her son to the doctor and that there seemed to be

"one set of rules for some and a different set for others."  Harris Opp., Dkt. No. 105-2 at 61.

Second, she cites emails from Carl Willemin requesting and confirming an exception for Mara

Epstein to use unpaid leave time before her vacation days.  Harris Opp., Dkt. No. 105-2 at 69-

71.[22]

The allegations made (and documents cited) by Harris may support a claim that she was

treated differently than similarly situated individuals because of her race.  However, Harris's

submissions are muddled and convoluted, making it difficult for the Court to evaluate whether

her claims are sufficient to survive a motion to dismiss.  Accordingly, while recognizing that

Harris's pleadings are sparse in regard to her disparate treatment claims, the Court recommends

granting Harris leave to amend her complaint one final time to include *specific allegations* that

---

[21]      It is more typical that motions for summary judgment, rather than 12(b)(6) motions, are granted in these
circumstances.  *See, e.g.*, *Odesina v. St. Francis Hosp.*, 71 Fed. Appx. 80, 81-82 (2d Cir. 2003) (affirming summary
judgment on disparate treatment claim where plaintiff failed to present sufficient evidence showing she earned lower
salary than other similarly situated employees).

[22]      Again, as an analyst, Epstein was not similarly situated to Harris, but it is possible that NYULMC's
vacation policy was designed to be uniformly applied to all employees.

NYULMC's compensation and time off policies were driven by racial animus and that Harris

was treated differently than "similarly situated" individuals outside her protected class.

### c. The ADA Claim for Termination Based on Disability Against NYULMC Should Survive and Be Repled.

Title I of the ADA provides that "no covered entity shall discriminate against a qualified

individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42

U.S.C. § 12112(a).  In order to establish a *prima facie* case of discrimination under the ADA, a

plaintiff must show: "(a) that [her] employer is subject to the ADA; (b) that [she] is disabled

within the meaning of the ADA or perceived to be so by his employer; (c) that [she] was

otherwise qualified to perform the essential functions of the job with or without reasonable

accommodation; and (d) that [she] suffered an adverse employment action because of [her]

disability."  *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).[23]

To start, under the liberal standards afforded to *pro se* plaintiffs, the Court construes

Harris's pleadings to allege that NYULMC perceived her to have a mental impairment.[24]  The

ADA specifically protects against individuals who are "perceived" to have impairments.  The

ADA defines a disabled individual as one who has "(A) a physical or mental impairment that

substantially limits one or more major life activities of such individual; (B) a record of such an

---

[23]     The Court sets forth the *prima facie* elements here, recognizing that, as noted previously, "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit."  *Hedges*, 456 Fed. Appx. at 23.  *See* discussion *supra*, at II.B.2.a.

[24]     NYU and CCA Defendants correctly note that Harris does not raise an allegation that she was "perceived" to be disabled until her opposition.  Reply Memorandum of Law in Further Support of the NYU and CCA Defendants' Motion to Dismiss the Second Amended Complaint, Dkt. No. 132, at 4.  However, as Harris did plead a disability claim in her EEOC charge and SAC, the Court will accept the facts supporting this allegation as consistent with her earlier claims for purposes of adjudicating this motion.

impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A) (emphasis added).[25]

Notably, a plaintiff "who is 'regarded as disabled' is protected under the ADA even if she is not actually disabled." *Davis v. New York City Dep't of Educ.*, No. 10 Civ. 3812 (KAM) (LB), 2012 WL 139255, at *5 (E.D.N.Y. Jan. 18, 2012) (citing *Joseph v. North Shore Univ. Hosp.*, No. 08 Civ. 3799, 2011 WL 573582 (E.D.N.Y. Feb. 15, 2011)). Moreover, "an employee is 'not required to show that the disability [s]he is perceived as suffering from is one that actually limits, or is perceived to limit, a major life activity.'" *Id.* at *5 (citing *Darcy v. City of New York*, No. 06-CV-2246, 2011 WL 841375 (E.D.N.Y. Mar. 8, 2011). "Nor does the employee have to show that the employer had a reasonable basis for perceiving [her] as suffering from a disability; [the statute] merely requires [her] to show that the employer did so perceive [her]." *Id.* (internal citations omitted). Still, the ADA definition of disability does not apply to impairments that are transitory and minor. 42 U.S.C. § 12102(3)(B).

Harris has sufficiently alleged that NYULMC regarded her as disabled. Perhaps most telling is Harris's allegation that, on January 12, 2010, NYULMC's benefits department mailed her an application for a claim of disability leave under the FMLA. Harris Opp., at 11. The letter from NYULMC, attached to her opposition papers, includes an FMLA application and states:

---

[25] "Until recently, a plaintiff who alleged she was 'regarded as' having a disability was required to show that the perceived disability was one that 'substantially limited a major life activity." *Davis*, 2012 WL 139255, at *5 (internal citations omitted). However, "[t]he ADA Amendments Act of 2008 . . . set forth a new, more lenient, standard for determining whether an individual is 'regarded as disabled.'" *Id.*

"This is to confirm notification by your department to Human Resources of your absence from work due to your disability."  Harris Opp., Dkt. No. 105-1, Ex. A2 at 20.  Though Harris's other support for her claim that she was perceived as disabled (an email indicating that Glassman thought she had "problems" and notes that appear to be from CCA) is less persuasive, taken together, the Court finds Harris's allegations that she was regarded as disabled under the ADA sufficient for pleading purposes.

Nonetheless, Harris's pleadings are murky as to the issue of whether she was terminated *because of* her perceived disability, as opposed to because she failed to comply with CCA requirements.  Given the liberal amendment policy set forth by Rule 15(a), *see supra* at II.A.3, the Court recommends that Harris be permitted to amend her pleadings one final time to properly allege such a connection.  However, if Harris fails to plead plausible facts showing that an adverse employment action was taken against her because of her perceived disability, her disability claim should be dismissed.  *See Jackson v. Elmhurst Hosp. Ctr.*, No. 10 Civ. 5248 (RRM) (RER), 2012 WL 868965, at *6 (E.D.N.Y. Mar. 14, 2012) ("Where, as here, plaintiff has not pled any connection between a disability and an adverse employment action, dismissal is appropriate."); *Smith v. Reg'l Plan Ass'n*, No. 10 Civ. 5857 (BSJ) (KNF), 2011 WL 4801522, at *6 (S.D.N.Y. Oct. 7, 2011) (dismissing ADA claim in part because there was no allegation that any adverse action was "because of [plaintiff's] disability").

### d.  The Title VII Retaliation Claim Against NYULMC Should Be Dismissed.

The Title VII "antiretaliation provision" prohibits an employer from discriminating against an employee or applicant "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e-

(3)(a).  To establish a *prima facie* case of retaliation in violation of Title VII, a plaintiff must

show: "(1) participation in a protected activity; (2) that the defendant knew of the protected

activity; (3) an adverse employment action; and (4) a causal connection between the protected

activity and the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)

(internal quotations omitted).  An employment action in the retaliation context is adverse if it

"would have been materially adverse to a reasonable employee or job applicant."  *Hicks*, 593

F.3d. at 165 (internal quotations omitted).  "Actions are 'materially adverse' if they are 'harmful

to the point that they could well dissuade a reasonable worker from making or supporting a

charge of discrimination."  *Id*.  (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S.

53, 57 (2006)).

Though Harris attempts to assert a claim of retaliation in her SAC, there are simply no

factual allegations to support it.  To start, Harris alleges no participation in a protected activity.

"A protected activity is an activity taken in good faith to protest or oppose statutorily prohibited

discrimination." *Morgan v. NYS AG Office*, No. 11 Civ. 9389 (PKC) (JLC), 2013 WL 491525, at

*9 (S.D.N.Y. Feb. 8, 2013) (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d

199, 210 (2d Cir. 2006).  The failure to plausibly allege that she ever protested a discriminatory

practice, or had a reasonable belief that she was doing so, alone warrants dismissal of Harris's

retaliation claims.  *See id.*, at *10.

Harris's SAC includes a section titled "Pretexted and Retaliatory Actions," in which she

describes the altercation about her radio with Kevin Kirchen.  SAC, at 23.  While Harris may be

suggesting that the altercation was manufactured so that NYULMC could create a pretext for

taking a discriminatory adverse employment action against her, this is not a proper retaliation

claim because having a radio is not a protected activity.  *See* Harris Opp., at 11 ("Harris was sent

38

home from work after discussion about Harris having a radio in the office . . . . Other staff members outside her protected class had radios.").

In another section of the SAC, titled "Plaintiff Followed Employers' Instructions in Reporting & Opposing Unlawful Employment Practices," Harris states broadly, without any underlying factual basis, that she made attempts to "work with office managers and executives" and to communicate with executives in Human Resources in order to "address and correct biased and disparate treatment demonstrated towards her."   SAC, at 20.   Harris also asserts in an entirely conclusory fashion that "Defendants were prone to retaliatory actions."   *Id.*, at 22.   In her opposition, Harris states that she was retaliated against because "she refused to perpetuate the defendants' unethical practices."   Harris Opp., at 11.   However, she fails to explain the nature of these unethical practices or state facts that would suggest she was engaging in a protected activity.

In Harris's EEOC complaint, she alleged that she was retaliated against because she reported Irma Rosario, an executive assistant, for time falsification.   Harris Opp., Dkt. No. 105-1, at 53-54.   And, in a letter she sent to Reginald Odom on June 19, 2008 that appears to have been attached to her EEOC complaint, Harris stated that she was "being retaliated against for bringing forth information detailing the falsification of documentation by then Hospital Administration's office manager, Irma Rosario," and that, as a result, she was never promoted.[26]   Harris Opp., Dkt. No. 105-1, at 68.   However, Harris does not appear to bring this claim of retaliation before the Court.   She does not refer to the alleged retaliation regarding Rosario in the SAC and, while she

---

[26]         Harris also noted in this letter that she was retaliated against "for reporting the biased and disparate treatment in the use of the time off policy in Hospital Administration."   Harris Opp., Dkt. No. 105-1, at 68. However, nowhere else in her pleadings does Harris allege that she reported this policy or that she was retaliated against because of it.

39

mentions Rosario and the falsification of time in her opposition, she does not allege that she suffered retaliation because she reported Rosario or that she believed reporting Rosario to be a protected activity.  Harris Opp., at 14.

Further, to the extent that Harris's role in reporting Rosario may be characterized as a protected activity – and it is not at all clear that it can be since it is hardly an activity protesting or opposing discrimination – her claim of retaliation still fails as there is no causal connection alleged between her reports and her failure to be promoted or her termination.  Harris alleges no facts to suggest that her activities, protected or not, motivated NYULMC's decision not to promote or terminate her (which happened more than a year after the letter she sent to Reginald Odom).  Accordingly, she fails to plead a plausible claim for retaliation.  *Smith*, 2013 WL 1903856, at *5 ("Even if the Court assumes that she engaged in a protected activity," a plaintiff's retaliation claim cannot survive where "she pleads no facts that establish a causal connection between her complaints and her termination."); *Majeed v. ADF Cos.*, No. 11-CV-5459 (SJF) (ETB), 2013 WL 654416, at *11 (E.D.N.Y. Feb. 20, 2013) ("A complaint that makes only a general conclusory statement that the defendant retaliated against the plaintiff, and that fails to provide any factual detail describing the specific acts of retaliation, when it occurred and which employee of the defendant had knowledge of the plaintiff's protected activity or actually engaged in the claimed retaliation, is insufficient to withstand a motion to dismiss.").[27]

---

[27]     Although it does not appear to alter the pleading requirements for plaintiffs in employment discrimination cases, a recent Supreme Court decision further underscores the importance of causation for plaintiffs alleging retaliation under Title VII.  In *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, the Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  No. 12-484, 2013 WL 3155234, at *14 (U.S. June 24, 2013).

### e.   The Title VII Hostile Work Environment Claim Against NYULMC Should Be Dismissed.

A defendant may be liable for creating a hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  "To state a hostile work environment claim, a plaintiff must plead facts tending to show 'that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex,' or another protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 Fed. Appx. 140, 141 (2d Cir. 2012) (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2012); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).  A court evaluating claims of hostile work environment must consider the totality of the circumstances, weighing such factors as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "Isolated acts, unless very serious," will not sustain a hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

"While the standard for establishing a hostile work environment is high, [the Second Circuit] [has] repeatedly cautioned against setting the bar too high." *Terry v. Ashcroft*, 336 F.3d

41

128, 148 (2d Cir. 2003).  The test must be "whether 'the harassment is of such quality or quantity

that a reasonable employee would find the conditions of her employment *altered for the worse*.'"

*Id.* (emphasis in original) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70

(2d Cir. 2000)).

Harris alleges that she suffered a hostile work environment.  SAC, at 22-33.  She states

that in 2006 and 2008, she required medical leave "due to the cumulative effects of an [sic]

hostile work environment" and that "Defendants[ ] continually conspired against and exposed

[her] to a hostile and antagonistic work environment" which caused her "pain (physical and

mental), health problems, emotional stress, and distress."  *Id.* at 23.

Harris's allegations are insufficient to withstand a motion to dismiss.  Though she states

her work environment was "hostile," she does not give a single example of discriminatory

conduct that would establish an objectively hostile environment.  Harris may have perceived her

altercation with Kevin Kirchen as hostile, but there is no objective evidence that Kirchen's

actions were frequent, severe, threatening, or humiliating.  As an isolated incident, this does not

constitute a hostile work environment.  *See Gonzalez*, 2011 WL 4582428, at *4 (allegedly

sporadic conduct of plaintiff's supervisor, including chastising plaintiff on three occasions, not

inviting plaintiff to meetings, and keeping work files from him, did not "meet the required

severity and pervasiveness to state a claim for a discriminatory, hostile environment"); *Edwards*,

2012 WL 6101984, at *6 (complaints that plaintiff's supervisors "sometimes chastised her" were

not sufficiently severe to sustain a hostile work environment claim for purposes of a motion to

dismiss).  Harris does not allege any other specific conduct that would support her claim for a

hostile work environment and thus, it should be dismissed.[28]

> ### f.   The NYSHRL Claims for Disparate Treatment and for Termination Based on Disability Should Survive and Be Repled, and All Other NYSHRL Claims Should Be Dismissed.

Harris's claims for wrongful termination based on race, hostile work environment, and

retaliation under the NYSHRL should also be dismissed, as such claims are construed under the

same standards as their federal counterparts.  *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d

597, 609 (2d Cir. 2006); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000).

Similarly, as with her parallel federal claims, Harris may replead her claims under the

NYSHRL as against NYULMC for unequal pay and disability discrimination.  *Morgan*, 2013

WL 491525, at *14 (denying motion to dismiss plaintiff's disparate treatment discrimination

claim under NYSHRL where plaintiff adequately alleged claim under Title VII).

> ### g.   The Title VII and ADA Failure to Promote Claims Against NYULMC Should Be Dismissed.

> > #### i.   The pre-April 7, 2009 Failure to Promote Claims Under Title VII Against NYULMC are Barred by the Statute of Limitations.

Filing a charge with the EEOC or a state administrative agency is a prerequisite to

bringing a suit under Title VII or the ADA.  *Troeger v. Ellenville Cent. Sch. Dist.*, No. 12 Civ.

3905, 2013 WL 1908285, at *2 (2d Cir. May 9, 2013) (ADA); *Chin v. Port Authority of New

York & New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012) (citing 42 U.S.C. § 2000e—5(e)(1),

(f)(1)); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001).  A party has 300 days

---

[28]    Harris does allege that NYULMC blocked access to her work computer, shorted her paycheck, reversed and removed funds from her checking account, did not allow her to gather her personal property from her office, and did not return all of her personal property.  SAC, at 23.  However, the Court does not interpret this alleged conduct, all carried out in the days leading up to her termination, as facts alleged to support Harris's hostile work environment claim.  In any event, there is no plausible allegation that these actions were driven by discrimination.

from the date of the alleged discriminatory action to file its EEOC complaint.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002); *Harris v. City of New York*, 186 F.3d 243, 248 n.2 (2d Cir. 1999).  Title VII and the ADA preclude recovery for discrete acts of discrimination which occur outside of this statutory time period, regardless of whether such acts are related to other discriminatory acts alleged in timely filed charges.  *See Troeger*, 2013 WL 1908285, at *2; *Chin*, 685 F.3d at 156-57.

In certain cases, there are exceptions to the 300-day statutory bar.  The Title VII limitations period "may be tolled by evidence of a continuing violation, or waiver, estoppel, or equitable tolling."  *See Curtis v. Airborne Freight Corp.*, No. 98 Civ. 4062 (SAS), 1998 WL 883297, at *13 (S.D.N.Y. Dec. 17, 1998) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)).  The continuing violation exception "exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination," *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010), where "one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004).  However, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 113-14; *see also Chin*, 685 F.3d at 157 ("[A]n employer's failure to promote is by its very nature a discrete act."); *Glaser v. Fulton-Montgomery Cmty. College*, 50 Fed. Appx. 17, 20 (2d Cir. 2002) ("[A] failure to promote is considered a discrete act, to which the continuing violation doctrine does not apply.").  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  *Morgan*, 536 U.S. at 113.  "[E]ven serial violations – a series of discrete but related acts of discrimination – do

not warrant application of the continuing violations doctrine." *Milani v. Int'l Bus. Machs.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004) (citing *Morgan*, 536 U.S. at 114).

Here, Harris filed her charge with the EEOC on February 1, 2010.  Thus, any claims under Title VII or the ADA for failure to promote arising from unlawful acts that occurred more than 300 days prior to that date – April 7, 2009 – are time-barred.

Despite Harris's arguments that the equitable tolling doctrine should allow her claims to proceed (Harris Opp., at 7), equitable tolling is not warranted here.  While in certain circumstances, courts may equitably toll a deadline "so as to permit a plaintiff to proceed with a claim, such action is limited to 'rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising [her] rights.'" *Howard v. MTA Metro-North Commuter R.R.*, No. 12 Civ. 5055 (RA), 2013 WL 66467, at *4 (S.D.N.Y. Jan. 4, 2013) (citing *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (citation and internal quotation marks omitted).

There is nothing before this Court to indicate that Harris acted with reasonable diligence when the cause of action for her first failure to promote claim accrued in 2004.  SAC, at 19.  Nor does Harris assert a claim of waiver or estoppel, or argue that her case was affected by some "extraordinary circumstances" that would trigger the equitable tolling doctrine.  She simply states that "[e]quitable tolling, equitable estoppels, issue and claim preclusion . . . are applicable and need to be addressed." Harris Opp., at 7.  Even if the Court were to construe Harris's

assertion that she suffered "pain (physical and mental)," "health problems," "emotional stress," and "distress" (SAC, at 23) as a justification for tolling, this rationale is insufficient. *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (Plaintiff's "conclusory and vague claim" about her "paranoia, panic attacks, and depression" is "manifestly insufficient to justify any further inquiry into tolling" without "a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights"); *Apionishev v. Columbia Univ.*, No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *6 (S.D.N.Y. Mar. 25, 2011) ("[D]epression or illness alone are not sufficient to justify equitable tolling."). Accordingly, Harris's failure to promote claims arising under federal law that occurred prior to April 7, 2009 should be dismissed as time-barred.

> ### ii. The post-April 7, 2009 Failure to Promote Claims Under Title VII Against NYULMC Should Be Dismissed for Failure to State a Claim.

Harris alleges two failures to promote that occurred after April 7, 2009. She asserts that she was not promoted to the positions of: (1) Executive Assistant to Kim Glassman when Glassman was promoted to Senior Vice President, and (2) Executive Assistant to Dr. Sylvia Formenti. Harris Opp., at 8-11. "In order to establish a *prima facie* case of a discriminatory failure to promote, a [ ] plaintiff ordinarily must demonstrate that: '(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'" *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)). A plaintiff's claims must also give rise to an inference of discrimination. *Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *5, *8 (S.D.N.Y.

July 10, 2012) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).  While Harris

may not need to establish a *prima facie* case at the pleading stage, she must at least plead facts

that would render her failure to promote claims facially plausible.  *Hedges*, 456 Fed. Appx. at 23;

*Stewart*, 2012 WL 2849779, at *6.

With regard to the first opportunity, Harris states that on April 13, 2009, Glassman told

her that Glassman would likely replace Susan Bowar-Ferres when Bowar-Ferres retired, and that

when Glassman was promoted, she wanted Harris to serve as her executive assistant.  Harris

Opp., at 10.  Harris further alleges that in October of 2009, Glassman was "interviewing with

executives and trustees" but was "secretive and did not tell Harris."  *Id.*  However, as Harris

acknowledges, an announcement confirming Glassman's promotion was not made until February

8, 2010, which was *after* Harris had been terminated.  *Id.*  Accordingly, Harris cannot (and does

not) allege that she applied for the job of Executive Assistant when Glassman was promoted, or

that she was rejected.

As for the second promotion opportunity, Harris alleges that she began the application

process, but was unable to continue and finalize her application, because she was discharged on

January 20, 2010.  *Id.* at 10-11.  Thus, because Harris fails to state basic factual allegations

underlying a discriminatory failure to promote, these claims should be dismissed.  *See Romaine*

*v. N.Y. City College of Tech.*, No. 10 Civ. 431 (SLT) (SMG), 2012 WL 1980371, at *3 (E.D.N.Y.

May 30, 2012) (dismissing failure to promote claim where plaintiff did not allege he actually

applied for specific position).

### h.   The NYSHRL Failure to Promote Claims Against NYULMC Should Be Dismissed In Part.

The statute of limitations for actions under the NYSHRL is three years.  *Lugo v. City of New York*, No. 12 Civ. 3565, 2013 WL 1811271, at *1 (2d Cir. May 1, 2013) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)).  While the Second Circuit has yet to opine on the issue, numerous courts have found that filing a charge with the EEOC is sufficient to toll the statute of limitations on related NYSHRL and NYCHRL claims, and that doing so tolls the three-year time limit during the period in which the complaint is pending before the EEOC.  *See, e.g., Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011); *Wilson v. New York City Police Dep't*, No. 09 Civ. 2632 (PAC) (HBP), 2011 WL 1215735, at *4 (S.D.N.Y. Mar. 25, 2011); *Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722 (RJS), 2008 WL 5233590, at *5-6 (S.D.N.Y. Dec. 16, 2008) (citing cases).

Plaintiff filed her EEOC charge on February 1, 2010 and received her right to sue letter on October 18, 2011, which tolls the three-year limitations period by one year, eight months, and 17 days.  Harris filed her initial complaint on January 17, 2012.  Accordingly, her failure to promote claims that occurred before April 30, 2007 and are brought pursuant to the NYSHRL are time-barred and dismissed for the same reasons they were dismissed pursuant to Title VII and the ADA: they are discrete acts which occurred outside of the permissible statutory time period.  *See Morgan*, 536 U.S. at 122; *Staff v. Pall*, 233 F. Supp. 2d 516, 527-28 (S.D.N.Y. Oct. 17, 2002) (Report and Recommendation) (applying the reasoning of *Morgan* to NYSHRL

48

claims), *adopted by* 233 F. Supp. 2d 516 (S.D.N.Y Nov. 13, 2002), *aff'd*, 76 Fed. App'x 366 (2d Cir. 2003).[29]

As with her 2009 failure to promote claims under federal law, Harris's parallel failure to promote claims under the NYSHRL are also barred for failure to state a claim. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."); *Ortiz*, 2011 WL 4056901, at *2 ("[D]isability-based discrimination claims under the NYSHRL 'rely upon an analytical framework that substantially mirrors'" the ADA analysis. (citing *Pabon v. N.Y.C. Transit Auth.*, 703 F.Supp.2d 188, 198 (E.D.N.Y. 2010))).

Harris also alleges two failure to promote claims against NYULMC that occurred in 2008, thus falling within the applicable NYSHRL time period (after April 30, 2007).  SAC, at 20.  She also properly alleges that she was a member of a protected class and that during that year she applied and was rejected for two separate executive assistant positions.[30]  SAC, at 20; SAC Ex. 7, at 47-49.  A chain of emails between Harris and Wesley Smith, Vice President of Medical Center Finance, that is attached to the SAC support Harris's claim that she was qualified for the first position of an Executive Assistant. SAC Ex. 7, at 47-49.  Smith, who interviewed Harris, told her that "her resume and skills were truly impressive," that she "present[ed] herself in an extremely professional manner," and that she was "articulate, polite and easy to speak

---

[29]     In order to determine the date before which Harris's NYSHRL claims are time-barred, the Court subtracted three years (the statute of limitations for NYSHRL claims) and one year, eight months, and 17 days (the time Harris's charge was pending with the EEOC) from January 17, 2012 (the filing date of the original complaint).  The resulting date is April 30, 2007.

[30]     Harris also states in her SAC that she applied for no less than 16 different positions between 2001 and 2008.  SAC, at 20.  In support of this allegation, she cites an email in which she lists these positions, eight of which were in 2008.  SAC Ex. 5, at 45.  However, this is the only mention of these other positions; in the body of her SAC, Harris only refers to those described in the text of this Report and Recommendation.

with." *Id.* at 48-49.  However, he wrote that she was not selected because the position had been

modified to be more "secretarial" and that he "felt it would not be a position [that] was nearly

challenging enough for [her] experience and skill set."  *Id.*  Harris also alleges that "an Hispanic

surnamed candidate was selected" for the first position.  SAC, at 20.  She therefore plausibly

pleads her first failure to promote claim under the NYSHRL because the "[m]ere fact that a

plaintiff was replaced by someone outside the protected class" suffices to overcome the *prima*

*facie* stage for the required inference of discrimination.  *Santos v. Engelhard Corp.*, No. 05 Civ.

203 (PGG), 2009 WL 2432736, at *9 (S.D.N.Y. Aug. 6, 2009) (citing *Zimmermann v. Assocs.*

*First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).  Accordingly, this claim is sufficient to

withstand a motion to dismiss.

    With regard to the second position, Harris was told she was not selected due to her lack

of initiative, low test scores, and negative comments on her last performance review.  SAC, at

20; SAC Ex. 9, at 51.  Ostensibly in an attempt to undercut these assertions and to demonstrate

that she was in fact qualified for the position, Harris includes in her pleadings copies of her

typing test scores and her performance assessment for the period of 9/1/2008 to 8/31/2009, in

which she received a score of 4 out of 5 for her overall performance summary.  SAC Exs. 10-14,

22, at 52-56, 71-76.

    Still, even if Harris plausibly demonstrates that she applied, was qualified, and was

rejected for the second position, she fails to plausibly allege that this failure to promote arose in

circumstances that admit of an inference of discrimination.  Indeed, she states that another

African-American woman – an individual within her protected class – was hired for the second

position.  SAC, at 20.  *Cf. Stewart*, 2012 WL 2849779, at *9 (finding that African-American

plaintiff adequately alleged that failure to promote claims in circumstances allowing for

50

inference of discrimination because he alleged white detectives with less experience and lesser credentials were promoted ahead of him and other black co-workers); *Chacko v. Worldwide Flight Servs.*, No. 08 Civ. 2363 (NGG) (JO), 2010 WL 424025, at *4-6 (E.D.N.Y. Feb. 3, 2010) (finding an inference of discrimination where plaintiff alleged he was rejected in favor of a younger and less-qualified colleague outside his protected class).  Because there are no further allegations that this failure to promote Harris was based on discriminatory motives, her second 2008 failure to promote claim under the NYSHRL should be dismissed.

### 3.  The NYCHRL Claims Against NYULMC

The NYCHRL is not coextensive with its federal and state counterparts, but requires an independent analysis of a plaintiff's discrimination claims.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (explaining that New York City Council amended the NYCHRL because it had been "construed too narrowly"); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("[C]laims under the [NYCHRL] must be reviewed independently from and 'more liberally' than their federal and state counterparts." (quoting *Williams v. N.Y.C. Housing Auth.*, 61 A.D.3d 62, 66-69 (1st Dept. 2009))); *Davis–Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (evaluating plaintiff's NYCHRL hostile work environment claim separately from her Title VII and NYSHRL claims).  The NYCHRL should be broadly construed "in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Mihalik*, 715 F.3d at 109 (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).  Thus, "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards."  *Id.*

### a. The NYCHRL Claim for Termination Based on Race Against NYULMC Should Be Dismissed.

Despite the fact that the NYCHRL is construed more broadly than federal law, Harris still fails to plead a plausible claim for racially-based termination against NYULMC.  As described above, Harris's complaint is completely devoid of any allegation that she was terminated as a result of her race.  The Court thus recommends dismissal of this claim under the NYCHRL as well; such action is appropriate where, as here, a plaintiff's allegations fail to include any plausible suggestion of discriminatory intent.  *Durant v. New York City Hous. Auth.*, No. 12 Civ. 937 (NGG) (JMA), 2013 WL 1232501, at *11 (E.D.N.Y. Mar. 4, 2013) (Report and Recommendation) (recommending dismissal of discrimination claims under NYCHRL despite more liberal standard where plaintiff's allegations failed to suggest discriminatory intent), *adopted by* 2013 WL 1247516 (E.D.N.Y. Mar. 26, 2013); *Shallow v. Scofield*, No. 11 Civ. 6028 (JMF), 2012 WL 4327388, at *6 (S.D.N.Y. Sept. 21, 2012) (dismissing NYCHRL claims where plaintiff did not "actually allege in the complaint that he was fired for discriminatory reasons" and made no plausible allegation that discriminatory remarks were "causally connected to the decision to fire him").

### b. The NYCHRL Claim for Disparate Treatment Based on Race Against NYULMC Should Survive and Be Repled.

Because Harris should be granted leave to replead her federal and state claims against NYULMC that she suffered unequal pay and unequal benefits because of her race, her parallel NYCHRL claims should survive as well.  *Hoff v. WPIX, Inc.*, No. 11 Civ. 1591 (LBS), 2011 WL 4809763, at *2 n.1 (S.D.N.Y. Oct. 11, 2011) ("[W]here, as here, we find that employment discrimination claims would have been adequately pleaded had they been brought pursuant to federal law, we must conclude that they are adequately pleaded when brought pursuant to state or

city law."); *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909 (LAP), 2009 WL 3003244, at *4 n.10 (S.D.N.Y. Sept. 18, 2009) ("[S]ince NYCHRL claims are construed more broadly than Title VII claims and NYHRL claims, so long as a plaintiff has made out federal and state claims, he has in most cases made out a city claim as well.").

> ### c.   The NYCHRL Claim for Termination Based On Disability Against NYULMC Should Survive and Be Repled.

The NYCHRL deems it unlawful for an employer to discharge an employee "because of the actual or perceived . . . disability of that individual."  N.Y. City Admin. Code § 8-107(1)(a); *Akinfaderin v. W. P. Carey & Co. LLC*, No. 11 Civ. 3184 (LBS), 2011 WL 6961403, at *3 (S.D.N.Y. Dec. 28, 2011).  The definition of disability under the NYCHRL, which includes "any physical, medical, mental or psychological impairment," is broader than the definition of disability in the ADA.  *Akinfaderin*, 2011 WL 6961403, at *3 (citing N.Y. City Admin. Code § 8-102(16)).

Defendants' motion to dismiss Harris's disability claims against NYULMC under the NYCHRL should be denied because, as with her federal and state claims, Harris has alleged sufficient facts to establish a claim of disability discrimination.  *See Hoff*, 2011 WL 4809763 at *2 n.1.  As described above, Harris has pled facts plausible to suggest that NYULMC perceived she had a mental disability.  However, in further amending her pleadings, Harris must also clearly allege that she suffered an adverse employment action *because of* her disability.  Failure to do so will lead to dismissal of this claim.  *Schenk v. Verizon*, No. 10 Civ. 6281 (GBD), 2011 WL 6778284, at *2 (S.D.N.Y. Dec. 20, 2011) (dismissing NYCHRL disability claim despite more liberal standard where plaintiff asserted "no factual allegations that would lead to the inference that her disability was a motivating factor for her service suspension").

**d.  The NYCHRL Retaliation Claim Against NYULMC Should Be Dismissed.**

Similarly, the "retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (citing *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 71 (1st Dep't 2009)).  Retaliation in any manner is prohibited under the NYCHRL, "and '[t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment.'"  *Id.* (citing N.Y. City Admin. Code § 8-107(7)).  The elements required to assert a prima facie claim of retaliation under the NYCHRL are identical to the federal elements, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'"  *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (internal citations omitted).

Despite the more liberal standards afforded by the NYCHRL, Harris's retaliation claim fails because, as discussed *supra*, she has not sufficiently alleged that she engaged in any protected activity.  Accordingly, as she fails to set forth any facts that would plausibly suggest a protected activity, her retaliation claims must be dismissed in all respects. *Morgan*, 2013 WL 491525, at *14 (dismissing retaliation claim under NYCHRL despite less restrictive standard because plaintiff failed to adequately allege that he engaged in any protected activity or had a reasonable belief that he was doing so); *Durant*, 2013 WL 1232501, at *11 (E.D.N.Y. Mar. 4, 2013) (finding dismissal of retaliation claim appropriate under NYCHRL where plaintiff's allegations failed to suggest discriminatory intent and "nothing in the Complaint even remotely suggest[ed] that plaintiff's report . . . involved any protected activity").

54

### e. The NYCHRL Hostile Work Environment Claim Against NYULMC Should Be Dismissed.

The fact that Harris's federal hostile work environment claim was dismissed for failure to state a claim "is not an automatic bar to pleading a claim for hostile work environment under the NYCHRL." *Williams v. Metro-North Commuter R.R. Co.*, No. 11 Civ. 7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012); *see also Stewart*, 2012 WL 2849779, at *13 (explaining NYCHRL imposes lower bar for maintaining hostile work environment claim because it was intended to be more protective than state and federal counterpart).  "[A] plaintiff proceeding under the NYCHRL need not demonstrate either that her employer's conduct was 'sever[e] and pervasive[],' nor even that she was subject to discrete, 'tangible' adverse events." *Clarke v. Intercontinental Hotels Groups, PLC*, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *12 (S.D.N.Y. May 30, 2013) (citing *Mihalik*, 2013 WL 1776643, at *6); *see also Williams*, 2012 WL 2367049, at *13 (citing *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62 (1st Dep't 2009)) (Under the more protective NYCHRL, "the activity that allegedly creates a hostile work environment need not be pervasive or severe.").  Still, while claims under the NYCHRL "must be given an independent liberal construction," *Loeffler*, 582 F.3d at 278 (internal citations omitted), a plaintiff must still "plead facts tending to show that actions that created the hostile work environment were taken against him because of a prohibited factor." *Williams*, 2012 WL 2367049, at *13.  Notably, "[t]he broader remediation available under the City law does not allow the Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids." *Id.*

Here, Harris only appears to allege one discrete act that might serve to bolster her hostile work environment claim: the altercation with Kirchen about her radio and her subsequent

discipline.  She does maintain that she was treated differently in that other members outside of

her protected classes had radios and did not face discipline.  Harris Opp., at 11.  But Harris

makes no allegations that she was disciplined for having a radio *because of* her race or disability.

And "'unfairness' does not equate to hostility, no matter how inequitable." *Fattoruso v. Hilton*

*Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 579 (S.D.N.Y. 2012), *aff'd* 2013 WL 2123088

(2d Cir. May 17, 2013).  Therefore, even under the more liberal standard of the NYCHRL,

Harris's NYCHRL claim for hostile work environment warrants dismissal.  *Id.* at 578

(dismissing NYCHRL hostile work environment claim because plaintiff alleged nothing to

indicate that he was treated unequally based on his gender); *Williams*, 2012 WL 2367049, at *14

(finding plaintiff's failure to allege that defendant's acts were "perpetrated against him because

of either his race or his gender" was "fatal to his hostile work environment claim"); *Ortiz*, 2011

WL 4056901, at *4 n.10 (dismissing plaintiff's hostile work environment claim because it failed

"to state a claim under even the more permissive  NYCHRL standard" and did not "show that he

experienced disparate treatment because of his age or disability").  *Cf. Clarke*, at *11-12

(denying motion to dismiss NYCHRL hostile work environment claim despite dismissing claim

under state and federal law where plaintiff plausibly alleged that she had been treated less well

than other employees *because of* her protected characteristics).

### f.   The NYCHRL Failure to Promote Claims Against NYULMC Should Be Dismissed in Part.

As noted above, failure to promote claims are discrete acts for which the continuing

violation doctrine is inapplicable.  *See Morgan*, 536 U.S. at 122.  However, New York state

courts have since held that the more generous, pre-*Morgan* application of the continuing

violation doctrine applies to claims brought under the NYCHRL.  *See, e.g., Morgan*, 2013 WL

491525, at *12 (citing cases).  "Accordingly, '[o]therwise time-barred discrete acts can be considered timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'"  *Id.*  (citing *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012)) (internal citations omitted).

As described above, Harris broadly alleges that she was the victim of discrimination throughout her tenure at NYULMC.  Harris SAC, at 20.  She states that NYULMC "utilize[d] a discriminatory seniority and compensation system."  *Id.* at 19.  More specifically, she alleges that "Sharon Martinez, (Hispanic surnamed)" was promoted to office manager based on seniority and that "Maria Souffront (Hispanic)" was promoted to Executive Assistant within a year.  *Id.*  She also alleges that she applied for an "executive assistant office manager position" but that "Irma Rosario (Hispanic)") was hired despite the fact that Harris "was more qualified" and Rosario "did not meet NYULMC's minimum qualifications."  *Id.*  Finally, Harris states that she attempted to be promoted or transferred to at least 16 other positions between 2001-2008.  *Id.*  Despite the fact that Harris gives virtually no detail about these other 16 attempts, Harris's allegations do plausibly state a claim for failure to promote under the NYCHRL.  Thus, although the Court is not entirely persuaded NYULMC's failures to promote or transfer Harris amount to a discriminatory policy or practice, it recommends that Harris be granted leave to replead these claims under the NYCHRL.  The Court reiterates, though, that for such claims to survive, Harris must plead that these failures to promote were "part of a long and continuing pattern of discrimination" based on race.  *Morgan*, 2013 WL 491525, at *12.  Further, just as the Court recommended that Harris be granted leave under the NYSHRL to replead her first failure to promote claim in 2008, the Court recommends that Harris also be granted leave to replead her

57

parallel NYCHRL claim.  However, the Court recommends that all other NYCHRL claims from

2008-2010 be dismissed as Harris has not plausibly alleged a connection between her protected

characteristic and NYULMC's failure to promote her.  *See supra* II.B.2.g.ii; II.B.2.h.

### 4.  The Title VII and ADA Claims Against All Individual Defendants Should Be Dismissed.

"It is well settled that there is no individual liability under Title VII."  *Davis–Bell v.

Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) (citing *Lore v. City of Syracuse*, 670

F.3d 127, 169 (2d Cir. 2012)); *see, e.g., Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d

Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII." (citing *Wrighten v.

Glowski*, 232 F.3d 119, 120 (2d Cir. 2000))).  This mandate extends to all individual defendants,

including those with supervisory control over the plaintiff.  *Tomka v. Seiler Corp.*, 66 F.3d 1295,

1313 (2d. Cir. 1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not

be held personally liable under Title VII."), *abrogated on other grounds by Burlington

Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

Although no Second Circuit case has stated it explicitly, courts in this circuit have also

held there is no individual liability under the ADA.  *Givens v. City of New York*, No. 11 Civ.

2568 (PKC) (JCF), 2012 WL 75027, at *4 (S.D.N.Y. Jan. 9, 2012) (finding no individual

liability for ADA discrimination or retaliation claims); *Shallow*, 2012 WL 4327388 at *5 n.3

(holding that plaintiff's ADA and Title VII claims "against the individual defendants could not

be sustained as a matter of law as neither statute imposes liability on individuals"); *Cohn v.

KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (S.D.N.Y. 2010) ("Individuals may not be sued in

their individual or personal capacity under the ADA. . . ."); *Singh v. New York State Dep't of

Taxation & Fin.*, No. 06 Civ. 0299 (JTC) (LGF), 2012 WL 5988547, at *15 (W.D.N.Y. Nov. 29,

2012) ("It is well established that an individual defendant may not be held personally liable under the ADA."); *Fox v. State Univ. of N.Y.*, 497 F.Supp.2d 446, 449 (E.D.N.Y. 2007) (ADA) (collecting cases). *See also Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (individual defendants cannot be sued under retaliation provision of ADA); *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("[T]he ADA and ADEA . . . do not provide for actions against individual supervisors.").

Even if the individual Defendants could somehow be held liable under Title VII or the ADA, Harris did not clear the jurisdictional bar to bring suit against them because she failed to name the individuals in her EEOC complaint. *Johnson*, 931 F.2d at 209. Moreover, application of the identity of interest exception is not warranted: (1) Harris reasonably could have ascertained the roles of the individual Defendants at the time she filed her EEOC complaint; (2) the interests of NYULMC are not so similar as the individual Defendants that naming them would have been "unnecessary;" (3) the individual Defendants could have been prejudiced due to their absence in the EEOC proceeding as they had no notice; and (4) the individual Defendants in no way represented to Harris that their relationship with her was to be through NYULMC. *See Vital*, 168 F.3d at 619; *Johnson*, 931 F.2d at 209-10; *Brodie*, 1998 WL 599710, at *6-7.

Accordingly, all of Harris's federal claims against all the named individual Defendants should be dismissed.

### 5. The NYSHRL and NYCHRL Claims Against All Individual Defendants Should Be Dismissed in Part.

While the standards for liability under state law are the same as those under the equivalent federal antidiscrimination laws, *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006); *Ortiz*, 2011 WL 4056901, at *2, the NYSHRL and NYCHRL do provide for individual

liability in certain cases, in contrast to their federal counterparts.  *See, e.g.*, *Tomka*, 66 F.3d at

1317 (An individual defendant may be liable under the aiding and abetting provision of the

NYSHRL if he "actually participates in the conduct giving rise to a discrimination claim.")

*abrogated on other grounds by Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998); *Regan v.*

*Benchmark Co. LLC*, No. 11 Civ. 4511 (CM), 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012)

(internal citations omitted) ("An individual may be held liable for aiding and abetting violations

of NYCHRL . . . if he participates directly in discriminatory acts alleged by the Plaintiff.");

*Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) (Section 296(6) of the

NYSHRL provides for "aiding and abetting" liability, wherein an individual need not have

supervisory or hiring and firing power, but still must have "actually participated in the conduct

giving rise to the claim of discrimination.").  "A finding of participation in the alleged

discriminatory conduct 'requires a showing of direct, purposeful participation.'" *Regan*, 2012

WL 692056, at *39 (citing *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308 (JSR), 2011 WL 2119748,

at *7 (S.D.N.Y. May 23, 2011)).

Certain individual Defendants should be dismissed on this ground alone, as there are no

allegations that they "actually participated" in the conduct giving rise to the claim of

discrimination.  To wit, defendants Keith Baker, Robert Berne, Daniel Driesen, John Sexton, and

Melissa Schwartz[31] are not mentioned at all in the SAC.  Defendants Theresa Bischoff, Susan

Bowar-Ferres, Andrew Brotman, Robert Glickman, Robert Grossman, Amy Horrocks, Andrew

Litt, and Eric Rackow are only mentioned in lists that detail the hospital's office composition and

---

[31]     Defendants state that CCA does not employ anyone by the name Melissa Schwartz.  NYU and CCA
Defendants' Motion to Dismiss, at 1.  In her opposition, Harris states that Melissa Schwartzman was employed at
CCA for five years and provides an exhibit to that effect.  Harris Opp., at 13; 105-2, Ex. D7, 22-24.  Regardless, the
fact remains that there are no cognizable allegations against her.

the "Hospital Administration Executive Reporting Structure."  SAC, at 7-12.[32]  Aside from the

office composition and reporting structure lists, Defendant John Harney is only mentioned to the

extent that Harris states she was sometimes required to assist him in her administrative duties.

SAC, at 7, 10-11, 17.  Additionally, with regard to Dr. Jan Roda, Harris only alleges that she

made an appointment to see him after CCA mandated that she see a psychiatrist and that he

"breeched [sic] [her] protected medical rights."  Id. at 27-28. There are no allegations that he

participated in conduct giving rise to a claim of discrimination. Accordingly, claims against these

Defendants should be dismissed.

    With the exception of Glassman, Kirchen, and Odom, the NYU and CCA Defendants

argue that the individual Defendants listed below either had no personal involvement in Harris's

termination, no authority to supervise her, or that claims against them are time-barred.  NYU and

CCA Defendants' Motion to Dismiss, at 3, 23-24.  However, as many of these individual

Defendants are mentioned throughout Harris's pleadings and the extent of their participation in

alleged discriminatory conduct is unclear, the Court recommends denying the motion to dismiss

at this time with regard to:

> Kimberly Glassman, Kevin Kirchen, Reginald Odom, Carl Willemin, Irene Kreuscher, Alison Brehm, Sharon Martinez, Mona L. Sonnenshein, Irma Rosario, Maritza Ramos-Hernandez, Carol Musto-Schiano, Kevin Hannifan, Alyson Franklin

    In her third amended complaint, if Harris wishes to pursue claims against these remaining

individuals under state and city law, she must provide specific allegations as to how *each*

*particular defendant* actually participated in conduct giving rise to her claims of

---

[32]     Some of these Defendants are also briefly referred to in Harris's opposition, and the names of others appear in exhibits attached to her opposition.  For example, Harris states that emails exchanged between Susan Bowar-Ferres and others support Harris's claim that there were "negative discussions about her."  Harris Opp., at 9 (includes emails at B3). Harris also states that Glassman told her that Bowar-Ferres was going to retire.  Harris Opp., at 10.  She further states that her former supervisor, Kevin Kirchen, reported to Andrew Brotman and Kevin Hannifan.  Id. at 15.  Such references are insufficient to state a claim against these named Defendants.

discrimination.[33]  *See Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699 (ILG) (SMG), 2013 WL 2311837, at *5 (E.D.N.Y. May 24, 2013) (granting motion to dismiss for defendants against whom plaintiffs failed to allege "a single instance of discriminatory conduct"); *Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08 Civ. 42 (JG) (VVP), 2011 WL 7053807, at *14 (E.D.N.Y. Jan. 4, 2011) (Report and Recommendation) (It is a "basic pleading requirement that where a complaint names multiple defendants, Rule 8(a) requires that the plaintiffs indicate clearly the defendants against whom relief is sought, and the basis upon which relief is sought against the particular defendants.") (internal citations omitted), *adopted by* 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).  To be clear, the Court is making no findings on the merits with regard to these individuals; rather, it is simply reviewing the plausibility of all of Harris's potential claims and giving her one last opportunity to amend her pleadings as to these Defendants.  If Harris fails to properly allege claims against these individuals in her further pleading, they may renew their motions to dismiss.

### 6.  All Other Claims Should Be Dismissed.

#### a.  The Intentional Infliction of Emotional Distress Claim Should Be Dismissed.

There is a one-year statute of limitations for claims alleging intentional infliction of emotional distress ("IIED").  *Tornheim v. Federal Home Loan Mortg. Corp.*, 198 F.3d 235, 1999 WL 753328, at *1 (2d Cir. Sept. 7, 1999).  The statute begins to run at the time of the last act of the allegedly injurious conduct.  *Smith v. Soros*, No. 02 Civ. 4229 (JGK), 2003 WL 22097990, at

---

[33]    The Court further notes that to ultimately succeed in her claims against these individuals, Harris must first establish the liability of NYULMC because, under the NYSHRL and NYCHRL, liability "must first be established as to the employer/principal before an individual may be considered an aider and abettor."  *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999); *see also Jain v. McGraw–Hill Cos., Inc.*, 827 F.Supp.2d 272, 276–77 (S.D.N.Y. 2011), *aff'd* 506 Fed. Appx. 47 (2d Cir. Dec. 21, 2012).

*7 (S.D.N.Y. Sept. 5, 2003).  The "intentional" acts of which Harris complains – specifically,

that defendants blocked access to her work computer, shorted her paycheck, reversed and

removed funds from her checking account, did not allow her to gather her personal property from

her office, and did not return all of her personal property – all took place either shortly before or

after her termination, on January 15, 2010.  SAC, at 23.  Harris did not bring suit until January

17, 2012.  Accordingly, because the statute of limitations for IIED would have run in January of

2011, Harris is precluded from asserting a claim of IIED.  Moreover, even if Harris's claims

were not time barred, she fails to plead facts sufficient to overcome the "extremely high burden"

to establish a claim for IIED.  *See Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11 Civ. 5093

(CM), 2012 WL 4785703, at *6 (S.D.N.Y. Oct. 4, 2012).[34]

### b.  The HIPAA Claim Should Be Dismissed.

Any claims Harris purports to make under HIPAA (the Health Insurance Portability and

Accountability Act) should be dismissed as HIPAA "does not provide for either an express or

implied private right of action."  *See, e.g., Shallow*, 2012 WL 4327388, at *4 (internal citations

omitted).  Instead, only the Secretary of Health and Human Services or authorized state

authorities may bring a HIPAA enforcement action.  *Id.*  (citing 42 U.S.C. § 300gg-22(a)).

### c.  The Libel/Slander Claim Should Be Dismissed.

In Harris's opposition, she claims that NYU defamed her by setting out

misrepresentations of facts in its response to her EEOC complaint.  Harris Opp., at 12.  This

claim should be dismissed because statements to the EEOC are privileged as long as they are

---

[34]       In addition to the actions listed above, Harris alleges that defendants' actions had "a cumulative effect that
caused her pain (physical and mental), health problems, emotional stress, and distress."  SAC, at 23.  However, these
allegations are insufficient to plead a claim for IIED, which requires conduct "so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized society."  *See, e.g., Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (internal
citations omitted).

"material and pertinent to the questions involved." *Farzan v. Wells Fargo Bank*, No. 12 Civ.

1217 (RJS) (JLC), 2013 WL 474346, at *4 (S.D.N.Y. Jan. 25, 2013) (Report and

Recommendation) (citing *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009)),

*adopted by* 2013 WL 2641643 (S.D.N.Y. June 11, 2013).  As NYULMC's statements were

directly related to the claim that Harris herself filed with the EEOC, they cannot give rise to a

claim for defamation.  *Id*.

### d.   The Claim Brought Under § 1983 Should Be Dismissed.

Also in her opposition, Harris purports to bring a claim under 42 U.S.C. § 1983.  "Section

1983 provides a cause of action against any person who deprives an individual of federally

guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012)

(citing 42 U.S.C. § 1983).  However, "[b]ecause the United States Constitution regulates only the

Government, not private parties," a litigant claiming a violation of his constitutional rights under

§ 1983 "must first establish that the challenged conduct constitutes 'state action.'" *Ciambriello*

*v. Cnty of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *United States v. Int'l Bhd. of*

*Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir.

1991)); *see also Wellings-Crispin v. Compitello*, 120 F. App'x 885, 886 (2d Cir. 2005) ("[I]t is

well established that an action under 42 U.S.C. § 1983 must be based on some state action.")

(internal citations omitted).  Private actors do not engage in "state action" unless they are "willful

participant[s] in joint activities with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 152 (1970) (internal citations omitted).  None of the Defendants in this case is a

government actor, and none is alleged to have participated in any unconstitutional action by the

State or its agents.  Accordingly, Harris fails to state a claim under § 1983.

### e.   All Other Miscellaneous Claims Should Be Dismissed.

Harris also lists the following claims against each defendant: fail[ure] to address/correct misconduct, failure to protect employee, violation of privacy, loss of employment wages, pain and suffer[ing], purposed emotional harassment, theft of personal items/mail, professional misconduct.[35]  SAC, at 29-36.  These claims should be dismissed under Rule 8 and Rule 12(b)(6): they are not supported by factual allegations, fail to state a claim for relief, and fail to provide adequate notice to defendants.  *See, e.g., Edwards v. Jericho Union Free Sch. Dist.*, No. 11 Civ. 3261 (DRH) (WDW), 904 F. Supp. 2d 294, 308 (E.D.N.Y. Nov. 16, 2012) (finding that "legal conclusions alone – unsupported by factual allegations – cannot survive a Rule 12(b)(6) motion to dismiss") (citing *Iqbal*, 556 U.S. at 679); *Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08 Civ. 42 (JG) (VVP), 2011 WL 7053807, at *14 (E.D.N.Y. Jan. 4, 2011) (Report and Recommendation) (dismissing claims where plaintiff failed to "indicate clearly the defendants against whom relief is sought, and the basis upon which relief is sought against the particular defendants") (internal citations omitted), *adopted by* 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).

### 7.   Given the Liberal Pleading Standards of Rule 15(a), Harris Should Be Permitted to File a Third Amended Complaint, Subject to Certain Guidelines.

While Harris has already submitted four lengthy pleadings, she did so before her pleadings were tested by motion practice and without any guidance from the Court until she filed

---

[35]    Any attempt by Harris to assert a claim of medical malpractice against CCA or Dr. Roda is time-barred. The statute of limitations for medical malpractice is two and a half years.  *See* CPLR 214(a).  Neither defendant was named until August 7, 2012, meaning that, to be timely, the cause of action would have had to accrue on or after February 7, 2010.  However, there are no allegations that any malpractice happened after Harris's termination on January 15, 2010.

her SAC.[36]  Because this is the first occasion the Court has had to consider Harris's pleadings,

and, in light of her *pro se* status and the "liberal amendment policy" of Rule 15, *Gatto v. Jet Blue*

*Airways*, No. 09 Civ. 983 (LTS) (KNF), 2010 WL 125974, at *2 (S.D.N.Y. Jan. 13, 2010),

Harris should be granted leave to replead and file a final pleading – a third amended complaint –

for the following five claims: (1) disparate treatment against NYULMC for unequal

compensation and vacation policies under Title VII, the NYSHRL, and the NYCHRL;

(2) discriminatory termination based on disability against NYULMC under the ADA, the

NYSHRL, and the NYCHRL; (3) the first 2008 failure to promote claim against NYULMC

under the NYSHRL and NYCHRL; (4) all pre-2008 failure to promote claims under the

NYCHRL; and (5) aiding and abetting claims under the NYSHRL and NYCHRL against the

individuals in Group 1.  Harris is advised that her proposed TAC pending before the Court

neither presents plausible claims for relief nor does it pass muster under Rule 8.  As such, the

Court denies Harris's cross-motion to substitute the SAC with her proposed TAC.  Instead, in

submitting a revised TAC, Harris will need to start over and should be guided by the Court's

directions set forth in this Report and Recommendation (if adopted by the District Court).

Any further amended complaint "must include factual allegations describing the role of

each named defendant with sufficient clarity to permit the court to assess whether a plausible

claim has been stated against them."  *Cosby v. Russell*, No. 9:10–CV–0595 (TJM/DEP), 2012

WL 7678160, at *13 (N.D.N.Y. Nov. 20, 2012) (Report and Recommendation), *adopted by* 2013

WL 936588 (N.D.N.Y Mar. 11, 2013).  Harris should avoid broad conclusory statements of law,

and should describe the wrongful acts giving rise to her claims, the dates, times, and places of the

---

[36]      As noted earlier, with exhibits, Harris's original complaint was 47 pages; her first amended complaint was
81 pages; her second amended complaint was 77 pages; and, her proposed third amended complaint is 92 pages.
Further, her opposition papers are 300 pages.

alleged acts, and the individuals who committed each alleged wrongful act. Long lists of office composition and reporting structure should be excluded. For her claims against NYULMC, Harris should allege a clear connection that plausibly suggests adverse actions were taken against her because of her protected status. As for the individual Defendants, Harris must allege facts demonstrating their specific participation in any alleged discriminatory actions. Harris is also advised that her third amended complaint will "completely replace the prior complaint in the action, and thus it renders [any prior complaint] of no legal effect." *Jackson v. Sec'y of the United States Treasury*, 141 Fed. Appx. 8, 10 (2d Cir. 2005) (internal citations omitted).

Given that Harris was previously offered the opportunity to amend her complaint to state "a short and plain statement of the claim," as required under Rule 8, and that she did not do so, the Court recommends imposing a page limit of 25 pages – including exhibits – for Harris's Third Amended Complaint. *See Saunders v. Cate*, 2013 WL 1192394, at *2 ( (E.D. Cal. Mar. 22, 2013) (dismissing *pro se* plaintiff's 65-page second amended complaint against more than 49 defendants and imposing 25-page limit on third amended complaint that would be stricken from the record if plaintiff failed to comply); *Jackson v. Yates*, 2012 WL 14018, at *1, *7-8 (E.D. Cal. Jan. 4, 2012) (dismissing *pro se* 45-page complaint with 37 pages of exhibits and imposing 25-page limit on amended complaint). In filing her third amended complaint, Harris is also reminded that exhibits are unnecessary at this stage of the case. *See Jenkins v. N.Y. City Transit Auth.*, No. 00 Civ. 6310 (BSJ) (DFE), 2001 WL 1098025, at *1 (S.D.N.Y. Sept. 18, 2001).

With respect to the rest of Harris's claims, I recommend that the Court find that no further amendments can cure the deficiencies therein; accordingly, for the reasons set forth above, the following claims should be dismissed with prejudice: all claims against the non-NYULMC institutional defendants, CCA, and PPC; claims against NYULMC for wrongful

termination based on race in violation of Title VII, the NYSHRL, and NYCHRL; all claims

alleging retaliation and hostile work environment; all failure to promote claims under Title VII,

the ADA, and NYSHRL (with the exception of the first 2008 failure to promote claim); all

federal claims against the individual defendants; all NYSHRL and NYCHRL claims against the

individual defendants in Group 2; and all claims alleging IIED, violations of § 1983, libel or

slander, HIPAA violations, "professional misconduct," "failed to address/correct misconduct,"

"failure to protect employee," "violation of privacy," "loss of employment wages," "pain and

suffer," "purposed emotional harassment," and "theft of personal items/mail."  Harris has already

amended her complaint twice – only once as of right – and any further amendments with regard

to these claims would be futile.  *See Cuoco*, 222 F.3d at 112 (leave to amend *pro se* complaint

denied where amendment would be futile); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,

48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support

its claim, a complaint should be dismissed with prejudice.") (internal citations omitted); *Frith v.

Hill*, No. 07 Civ. 5899 (JSR), 2009 WL 3073716, at *18 (S.D.N.Y. Sept.23, 2009) (dismissing

*pro se* claim with prejudice where granting leave to amend would be futile and where leave to

amend had already been granted twice) (collecting cases);  *Apionishev*, 2011 WL 1197637, at *8

(denying leave to amend as futile where plaintiff "already had two opportunities to amend his

pleadings and demonstrate that he has cognizable claims").

     Once Harris has served and filed her third (and final) amended complaint, the remaining

Defendants will be permitted to renew their motions to dismiss, if appropriate, or otherwise

respond to the revised pleadings.

### 8.  Motions For Sanctions

Finally, both Harris and counsel for the NYU/CCA Defendants have moved for sanctions.  These motions are without merit and do not warrant extensive discussion.  Defendants request the Court to consider sanctions and grant them attorneys' fees and costs on the ground that Harris has brought claims that have no basis in fact or law.  NYU and CCA Defendants' Motion to Dismiss, at 26.  Under Rule 11(c), a court may impose sanctions on parties who submit motions or other papers that are frivolous, meant to harass or intimidate, or incurably lacking evidentiary support.  Fed. R. Civ. P. 11(c)(1); *NMD Interactive, Inc. v. Chertok*, No. 11 Civ. 6011 (RJS), 2013 WL 1385213, at *11 (S.D.N.Y. Mar. 18, 2013).  However, with respect to legal contentions, "[t]he operative question is whether the argument is frivolous, *i.e.*, the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'"  *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (citing *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)).

Harris's submissions (or at least some of them), which are to be construed liberally given her status as a *pro se* plaintiff, can be interpreted to raise non-frivolous arguments and "[t]he fact that [some of her] arguments are ultimately unavailing does not alter this conclusion."  *Chertok*, 2013 WL 1385213, at *11 n.6 (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  Although some of Harris's arguments may well be meritless, "they are not so obviously without merit as to warrant sanctions."  *Milner v. City of New York*, No. 10 Civ. 9384 (JGK) (GWG), 2012 WL 3138110, at *8 (S.D.N.Y. Aug. 2, 2012) (Report and Recommendation), *adopted by*, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012).  Moreover, when considering whether to impose sanctions on a *pro se* litigant, "the court may consider the special

circumstances of litigants who are untutored in the law."  *Id.*  Accordingly, sanctions (including fees and costs) against Harris under Rule 11 are inappropriate at this time.  *Id.*[37]

Harris argues that sanctions are warranted because counsel for Defendants "have been dishonest and unethical," "combined efforts to coerce and harass Harris in attempt [*sic*] to gain consent to discontinue legal proceedings against their clients," and "attempted to mislead the Court by false and/or inaccurate information."  Harris's Motion to Impose Sanctions on Counsel for Defendants, Dkt. No. 117, at 1.  It is unclear on what ground Harris seeks to impose sanctions.  However, even if the Court construes this as a motion under 28 U.S.C. § 1927, which authorizes sanctions when an attorney "unreasonably and vexatiously" "multiplies the proceedings in any case" and "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," the court must first make "a finding of conduct constituting or akin to bad faith."  28 U.S.C. § 1927; *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 195 (S.D.N.Y. 2011) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009)).  Here, counsel for the NYU and CCA Defendants have been vigorously defending their case, as they are entitled to do.  Their primary communications with Harris were a result of the Court directing defense counsel to send a letter to Harris outlining which defendants named in the proposed TAC they believed to be improper

---

[37]     The cases cited by defense counsel do not call for a contrary holding.  In *In re Valle*, the court imposed sanctions against a *pro se* plaintiff because of his "pattern of vexatious litigation:" filing 20 separate actions in a period of four years and having been warned twice that his litigious conduct was sanctionable.  No. MC-09-831 (DGT), 2010 U.S. Dist. LEXIS 3212, at *1-4 (E.D.N.Y. Jan. 13, 2010).  In *Malley v. Corp. Counsel*, the *pro se* plaintiff had filed multiple lawsuits over a period of 13 years; he was only sanctioned when he brought another lawsuit despite the fact that he was enjoined from filing any more complaints in any federal court without first obtaining permission from a judge of that court and was warned that continued filing could result in sanctions. 9 Fed. Appx. 58, 59 (2d Cir. 2001).  Though sanctions may be warranted against *pro se* plaintiffs in cases such as these, Harris's circumstances are clearly distinguishable as she has not engaged in a pattern of vexatious conduct; she has not filed any prior lawsuits, nor has she previously been warned by the Court that her actions could be sanctionable.

along with relevant authority to support that contention. (Dkt. No. 47).  There is simply no

evidence of bad faith to justify the imposition of sanctions on defense counsel.

Furthermore, "courts should exercise restraint in awarding sanctions and sanctions should

be reserved for extreme cases."  *Root Bros. Farms v. Mak*, No. 05 Civ. 10863 (LBS) (HBP),

2007 WL 2789481, at *6 (S.D.N.Y. Sept. 25, 2007) (citing *Mone v. C.I.R.*, 774 F.2d 570, 574

(2d Cir. 1985)).  This is not a case where the parties have exhibited such extreme behavior so as

to warrant sanctions; accordingly, the Court recommends denying both Harris's and Defendants'

motions for sanctions.

## III.   RECOMMENDATIONS

For the foregoing reasons, it is hereby respectfully

RECOMMENDED that Defendants' motions to dismiss be GRANTED as to Harris's Title VII,
ADA, NYSHRL and NYCHRL claims against all non-NYULMC institutional Defendants, CCA,
and PPC and that those claims be DISMISSED with prejudice; and it is further

RECOMMENDED that Defendants' motions to dismiss be GRANTED as to Harris's
Title VII, NYSHRL, and NYCHRL claims against NYULMC for wrongful termination based on
race; all federal and state claims alleging retaliation and hostile work environment; all failure to
promote claims under Title VII, the ADA, and NYSHRL (with the exception of the first 2008
failure to promote claim); all failure to promote claims from 2008-2010 (with the exception of
the first 2008 failure to promote claim) under the NYCHRL, and that those claims be
DISMISSED with prejudice; and it is further
RECOMMENDED that Defendants' motion to dismiss be GRANTED as to Harris's federal
claims against individual Defendants and as to her NYSHRL and NYCHRL claims against all
the individual Defendants in Group 2, and that those claims be DISMISSED with prejudice; and
it is further

RECOMMENDED that Defendants' motion to dismiss be GRANTED as to Harris's claims for:
IIED, libel or slander, "professional misconduct," "fail[ure] to address/correct misconduct,"
"failure to protect employee," "violation of privacy," "loss of employment wages," "pain and
suffer[ing]," "purposed emotional harassment," and "theft of personal items/mail," as well as her
claims for violations of § 1983 and HIPAA, and that those claims be DISMISSED with
prejudice; and it is further

RECOMMENDED that Harris's cross-motion to file her proposed Third Amended Complaint be DENIED, but that she be GRANTED leave to file a Third Amended Complaint, limited to 25 pages, alleging the following claims: disparate treatment against NYULMC for unequal compensation and vacation policies under Title VII, NYSHRL, and NYCHRL; discriminatory termination based on disability against NYULMC under the ADA, NYSHRL, and NYCHRL; the first 2008 failure to promote claim against NYULMC under the NYSHRL and NYCHRL; all pre-2008 failure to promote claims under the NYCHRL; and aiding and abetting claims under the NYSHRL and NYCHRL against the Group 1 individuals; and it is further

RECOMMENDED that both Defendants' and Harris's motions for sanctions be DENIED.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Abrams.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010). If Harris does not have access to cases cited herein that are reported on Westlaw or Lexis, she should request copies from Defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Dated:  New York, New York
        July 9, 2013

JAMES L. COTT
United States Magistrate Judge